---

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

SIOBHAN JAMES, on behalf of herself and all others similarly situated
Plaintiff – Appellee

v.

RPS HOLDINGS, LLC, d/b/a Capital Cabaret
Defendant – Appellant

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

---

## APPELLANT'S BRIEF

---

Luke Lirot, Esq,
Florida Bar No. 714836
LUKE CHARLES LIROT, P.A.
2240 Belleair Rd., Suite 190
Clearwater, FL 33764
727-536-2100
727-536-2110 (fax)
Luke2@LirotLaw.com

MICHAEL STRICKLAND, ESQ.
NC BAR # 17101
MICHAEL W. STRICKLAND AND ASSOC.
PO BOX 30787
RALEIGH, NC 27622
919-571-3898
919-571-1038 (FAX)
MSTRICKLAND@STRICKLANDLAW.COM

*Counsel for Appellant*

**DISCLOSURE OF CORPORATE AFFILIATIONS**
**AND FINANCIAL INTERESTS**

Pursuant to FRAP 26.1 and 4 Cir. R. 26.1, RPS HOLDINGS, LLC, d/b/a

Capital Cabaret makes the following disclosure:

1.      Is said party a publicly held corporation or other publicly held entity?

No

2.      Does said party have any parent corporations?

No

If the answer is yes, identify all parent corporations, including all generations of parent corporations:

N/a

3.      Is 10% or more of the stock of said party owned by a publicly held corporation or other publicly held entity?

No

If yes, identify all such owners:

N/a

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(a)(2)(B))?

No

If yes, identify entity and nature of interest:

N/a

5.      Is said party a trade association?

No

If yes, identify any publicly held member whose stock or entity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

N/a

6.      Does the case arise out of a bankruptcy proceeding?

No

If yes, identify any trustee in the members of any creditors' committee:

N/a

/s/ *Michael Strickland*                        Dated: May 2, 2022
Michael Strickland
(Signature of counsel)

# TABLE OF CONTENTS

DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTERESTS...................................................................................... ii

TABLE OF CONTENTS..............................................................iv

TABLE OF AUTHORITIES ......................................................v

JURISDICTIONAL STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION ..................................................................1

STATEMENT OF ISSUES PRESENTED FOR APPEAL ......................................3

STATEMENT OF THE CASE.......................................................4

SUMMARY OF THE ARGUMENT ...................................................11

ARGUMENT …………………………………..……………………………...12

I. STANDARD OF REVIEW…………………………………………………….12

II. DISCUSSION OF ISSUES……………………………………………………….12

A. THE DISTRICT COURT ERRED BY NOT RECOGNIZING NORTH CAROLINA CONTRACT LAW AND FEDERAL LAW FAVORING ARBITRATION…………………………………………………..…12

B. ALTERNATIVELY, CAP CAB SHOULD HAVE BEEN ENTITLED TO AN EVIDENTIARY HEARING ON ANY ISSUE OF MATERIAL FACT AS TO CONTRACT FORMATION…………………………………………...…20

CONCLUSION........................................................................23

CERTIFICATE OF COMPLIANCE…………………………………...…25

CERTIFICATE OF SERVICE…………………………………………...…25

# TABLE OF AUTHORITIES

Cases

*Archer v. Rockingham Cty.*,
548 S.E.2d 788 (N.C. Ct. App. 2001) ……………………………………………18

*Blankenship v. Seventeenth St. Assocs., LLC*,
No. 1:11-CV-0627, 2012 WL 10008266 (S.D.W. Va. Feb. 1, 2012).....................23

*Chorley Enterprises, Inc. v. Dickey's Barbecue Restaurants, Inc.,*
807 F.3d 553, 563 (4TH Cir. 2015) ……………………………………………....14

*Creech v. Melnik*,
495 S.E.2d 907 (N.C. 1998)...................................................... 17, 18, 20

*Davis v. BSH Home Appliances Corp.*,
4:15-CV-103-FL, 2016 WL 2901741 (E.D.N.C. May 18, 2016).................... 19, 21

*Dean Witter Reynolds, Inc. v. Bryd*,
470 U.S. 213, 218 (1985) ……………………………………………………...13

*Dillon v. BMO Harris Bank*,
No. 1:13cv897, 2015 WL 6619972 (M.D.N.C. Oct. 30, 2015)............................23

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938................................................................................17

*Granite Rock Co. v. Int'l Bd of Teamsters*,
561 U.S. 287 (2010)......................................................................16

*Habitat Architectural Grp., P.A. v. Capitol Lodging Corp.,*
28 F. App'x 242 (4th Cir. 2002) ...........................................................13

*Harrison v. Wal-Mart Stores, Inc.*,
613 S.E.2d 322, 327 (N.C. Ct. App. 2005)...........................................17

*Hightower v. GMRI, Inc.,*
272 F.3d 239, 242-43 (4th Cir. 2001) .................................... 19, 20, 21, 22

*Hill v. Peoplesoft USA, Inc.*,
412 F.3d 540, 543 (4th Cir. 2005) ...........................................................17

*Howard v. Oakwood Homes Corp.*,
516 S.E.2d 879 (N.C. Ct. App. 1999)................................................ 19, 22

*Howell v. Smith*,
128 S.E.2d 144 (N.C. 1962).....................................................................19

*Hunt v. Debt Assistance Network, LLC*,
1:18-CV-644 (M.D. N.C. 2019) ……………………………………………….13

*King v. Oakwood Home, Inc.*,
2000 WL 1229753 (M.D.N.C. Aug. 3, 2000)................................... 19, 22

*Krusch v. TAMKO Bldg. Prod., Inc.*, 3
4 F. Supp. 3d 584 (M.D.N.C. 2014) .........................................................17

*Lorenzo v. Prime Commc'ns, L.P.*,
806 F.3d 777 (4th Cir. 2015) ............................................. 19, 20, 21, 22

*Manigault v. Macy's E., LLC*,
318 F. App'x 6 (2d Cir. 2009) .................................................................21

*May v. Higbee Co.*,
372 F.3d 757 (5th Cir. 2004) .......................................................... 19, 21

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1, 24 (1983) ……………………………………………………….13

*Noohi v. Toll Bros., Inc.*,
708 F.3d 599 (4th Cir. 2013) ...................................................................12

*Padro v. Citibank*,
No. 14-CV-2986 NGG LB, 2015 WL 1802132 (E.D.N.Y. Apr. 20, 2015)..... 19, 21

*Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.*,
380 F.3d 200 (4th Cir. 2004) ...................................................................12

*Perry v. Thomas*,
482 U.S. 483 (1987)......................................................................................17

*Rota-McLarty v. Santander Consumer USA, Inc.,*
700 F.3d 690, 696 (4th Cir. 2012) ……………………………...……………….3

*Scales v. SSC Winston-Salem Operating Co., LLC*,
No. 1:17CV539, 2017 WL 4467278 (M.D.N.C. Oct 5, 2017) ..............................22

*Schwarz v. St. Jude Med., Inc*.,
802 S.E.2d 783 (N.C. Ct. App. 2017)............................................................ 17, 19

*Snyder v. Freeman*,
266 S.E.2d 593 (N.C. 1980).................................................................... 17, 18, 20

*Southland Corp. v. Keating,*
465 U.S. 1, 194 S.Ct. 852 (1984) ……………………………………………...14

*Stedor Enters., Ltd. v. Armtex, Inc*.,
947 F.2d 727, 730 (4th Cir. 1991) ……………………………………………...3

*Thomas v. Pub. Storage, Inc.,*
957 F. Supp. 2d 496 (S.D.N.Y. 2013) ........................................................... 19, 21

*Ward v. Ward*,
797 S.E.2d 525 (N.C. Ct. App. 2017)...............................................................18

Statutes

9 U.S.C. § 1 .....................................................................................................14

9 U.S.C. § 3 .....................................................................................................15

9 U.S.C. § 4 …………………………………………………………………16

9 U.S.C. § 16 ..................................................................................................2, 3

28 U.S.C. § 1331 ...............................................................................................1

28 U.S.C. § 1367 ...............................................................................................1

29 U.S.C. § 203 …………………………………………………………4

29 U.S.C. § 206 ………………………………………………………....4

29 U.S.C. § 207 ………………………………………………………4

North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.1 ............................4
Other Authorities

17 C.J.S. Contracts § 32 ..........................................................................20

Merriam-Webster Dictionary, https://www.merriam-
webster.com/dictionary/satisfied (last visited Dec. 3, 2019)...................................16

Restatement (Second) of Contracts § 23 ................................................................18

SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW
OF CONTRACTS §4:1 (4th ed. 2007) ................................................................20

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

## JURISDICTIONAL STATEMENT

### A.    Basis for District Court's Jurisdiction

Plaintiff-Appellee, Siobhan James ("Ms. James") initiated this action asserting, among other claims, violations of the Fair Labor Standards Act ("FLSA"). In particular, Ms. James alleged that the Appellant, RPS Holdings, LLC, misclassified her as an independent contractor during the time she worked at the Capital Cabaret, an establishment operated by Appellant in Morrisville, North Carolina ("Cap Cab"). The district court therefore had federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction over the pendent state law claims arising from the common nucleus of operative facts giving rise to the federal question jurisdiction pursuant to 28 U.S.C. § 1367.

### B.    United States Court of Appeals Jurisdiction

Ms. James also sought to maintain the lower court action on behalf of a proposed collective ("Putative Plaintiffs"), which were alleged to include "[a]ll individuals who were, are, or will be employed at ...Capital Cabaret gentlemen's club as exotic dancers at any time three years prior to the commencement of this action, through the present. Pursuant to the FLSA, Plaintiff moved to conditionally

certify the action as a collective action and sought Court-authorized notice to Putative Plaintiffs. (Dkt. 35, JA 43-49). Appellant opposed the Certification Motion and moved to compel arbitration (or, alternatively, stay judicial proceedings) on the grounds that Ms. James had signed a written arbitration agreement (the "Agreement") requiring any such disputes to be administered in arbitration. ("the "Arbitration Motion," Dkt. 41, JA 59-72). The district court denied the Arbitration Motion. Cap Cab appeals the district court's denial in part of Defendant's Motion to Dismiss or Stay in Favor of Arbitration (Dkt. 47, 123-158). This Court, thus, has appellate jurisdiction over this interlocutory appeal pursuant to 9 U.S.C. § 16(a)(1)(A).

The judgment arises out of the district court's Memorandum Opinion denying Defendant's Motion to Dismiss or Stay in Favor of Arbitration (Dkt. 41, JA 59-72), Plaintiffs' Opposition to Defendant's Motion to Dismiss or Stay in Favor of Arbitration (Dkt. 42, JA 73-102), and Defendant's Reply to Plaintiffs' Partial Opposition to Defendant's Motion to Dismiss or Stay in Favor of Arbitration. (Dkt. 43, JA 103-115). Cap Cab seeks review of the district court's denial of Defendant's Motion to Dismiss or Stay in Favor of Arbitration as to Plaintiff. (Dkt. 47, JA 123-158).

**C.    Filing Dates Establishing the Timeliness of the Appeal.**

The district court issued the Order denying the Arbitration Motion on December 13, 2021. (Dkt. 47, JA 123-158). Appellant filed its Notice of Appeal on December 29, 2021 (Dkt. 48), and on January 7, 2022, this Court preliminarily docketed Appellant's appeal as Court of Appeals Docket Number 22-1027. The appeal is therefore timely.

**D.    Assertion of Jurisdictional Basis.**

This Court's jurisdiction to review the district court's denial of Appellant's Motion to Compel Arbitration is set forth in the Federal Arbitration Act, ("The FAA provides for appeals from, *inter alia*, orders 'refusing a stay of any action under section 3 of this title,' 4 or 'denying a petition under section 4 of this title 5 to order arbitration to proceed.' 9 U.S.C. § 16(a)(1)(A)-(B).'), See also *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 696 (4th Cir. 2012), and *Stedor Enters., Ltd. v. Armtex, Inc.*, 947 F.2d 727, 730 (4th Cir. 1991). Cap Cab respectfully asserts that this interlocutory appeal properly invokes the jurisdiction of this Court.

<u>**STATEMENT OF ISSUES PRESENTED FOR APPEAL**</u>

I.    Whether the district court erred by not finding the original arbitration agreement enforceable and failed to apply applicable contract law to find the arbitration agreement enforceable.

II.    Whether there existed a disputed issued of material fact, such that the district court was obligated to allow discovery and conduct an evidentiary hearing on the issue of arbitrability.


## STATEMENT OF THE CASE

On February 11, 2020, Appellee, on behalf of herself and other similarly situated individuals, filed her Class and Collective Action Complaint against, *not* Appellant, but ***PRS Partners, LLC d/b/a Capital Cabaret*** ("Cap Cab") in the United States District Court for the Middle District of North Carolina. (Dkt. 1). Initially, this error was not identified by anyone on either side, presumably because *PRS Partners, LLC* was the owner of the property on which the Cap Cab was located. After this error was identified, the operative complaint was amended to identify *RPS Holdings, LLC,* as the operator of the club. (Dkt. 33, JA 11-42).

The Complaint and Amended Complaint speak for themselves, and allege that Cap Cab violated the FLSA by not paying exotic dancers performing at the Cap Cab "minimum wage," and other related "employment" causes of action.

Alleged in the Complaint are a variety of causes of action, including Count I: Violation of Fair Labor Standards Act, 29 U.S.C. §§ 203(m), 206 (Unlawful Tip Deductions and Failure to Pay Minimum Wage) (On Behalf of Named, Opt-In, and Putative Plaintiffs); Count II: Violation of Fair Labor Standards Act, 29 U.S.C. §

207 (Failure to Pay Proper Overtime Wage) (On Behalf of Named, Opt-In, and Putative Plaintiffs); Count III: Violation of the North Carolina Wage and Hour Act, N.C. Gen. Stat. §§ 95-25.6, 95-25.8, 95-25.13 (Invalid or Unauthorized Deductions from Tips and/or Promised Straight and Overtime Wages) (On Behalf of Named, Opt-In, and Putative Plaintiffs); Count IV: Negligent Employment, Supervision, and Retention, North Carolina Common Law, Brought by Plaintiff James; Count V: Assault, North Carolina Common Law, Brought by Plaintiff James; Count VI: Battery, North Carolina Common Law, Brought by Plaintiff James; Count VII: Intentional Infliction of Emotional Distress, North Carolina Common Law, Brought by Plaintiff James; Count VIII: Negligent Infliction of Emotional Distress, North Carolina Common Law, Brought by Plaintiff James; and Count IX: Wrongful Discharge in Violation of North Carolina Public Policy, North Carolina Common Law, Brought by Plaintiff James. (Dkt. 1 and 33, JA 11-42).

On March 3, 2020, before any correction of *PRS Partners, LLC* to *RPS Holdings, LLC,* Ms. James filed her motion to (i) conditionally certify the FLSA opt-in class of current and former exotic dancers and (ii) requesting court authorized and approved notice to current and former exotic dancers of the existence of the district court action and of each individual's right to opt-in to the action to prosecute their claims collectively as expressly authorized by FLSA Section 216(b). [Dkt. 8]. On March 13, 2020, Cap Cab (filing as and on behalf of the misidentified entity *PRS*

*Holdings, LLC*) filed a Motion to Compel Plaintiff's claims to the forum of arbitration, attaching the originally located arbitration agreement signed by Appellee, and identifying the "company" as the "Cap Cab." (Dkt. 16, 41, JA 59-72).

On March 1, 2021, the district court entered a "Text Order" denying Appellee and Appellant's Motions, without prejudice, and identified the fatal flaw in Appellant's Motion to Compel Arbitration, primarily referencing the misidentified entity ("PRS" rather than "RPS") as a party to the alleged arbitration agreement. The district court then directed Plaintiff to submit an Amended Complaint correctly identifying Cap Cab under its proper legal name, *RPS Holdings, LLC,* and to re-submit briefing seeking relief as to the correct entity, directed via Text Order on March 1, 2021

On March 4, 2021, Ms. James filed her First Amended Complaint, therein seeking individual and class/collective relief against Cap Cab under its correct legal identity, RPS Holdings, LLC. (Dkt. 33). Thereafter, on March 9, 2021, Appellee filed her Amended Motion for Conditional Certification. (Dkt. 35, JA 43-49). On March 19, 2021, Cap Cab (filing under designation of the correct entity, RPS Holdings, LLC), filed its Renewed Motion to Compel Arbitration and Motion to Dismiss, or in the alternative, to Stay Proceedings. (Dkt. 41, JA 59-72).

Confident that the "Cap Cab" agreement was enforceable, reflected a "meeting of the minds" between the Ms. James and the Cap Cab that there was an

agreement to arbitrate any disputes between the performer, Ms. James, and the club, Cap Cab, and viewed by the Cap Cab as fully valid, Appellant attached the same "Cap Cab" arbitration agreement to the Motion to Arbitrate. (Dkt. 41-1). This Agreement described the scope of arbitration as follows:

> The Agreement reads, in pertinent part, as follows (emphasis supplied):

>> The parties to this Agreement agree that all "covered claims" that Entertainer may have against Company (or its owners, directors, officers, managers, employees, or agents), or that Company may have against Entertainer, shall be submitted exclusively to and determined exclusively by binding arbitration in Charlotte, North Carolina under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, regardless of the state in which arbitration is held or the substantive law applied in the arbitration.

>> **Entertainer agrees that she will pursue to binding arbitration all "covered claims" as an individual and will not lead, join, or serve as a member of a class or group of persons bringing such "covered claims." Company agrees that it will pursue to binding arbitration all "covered claims" as a single entity and will not lead, join, or serve as member of a class or group of entities bringing such "covered claims."**

>> The parties to this Agreement agree that "covered claims" include, but are not limited to, all claims alleging discrimination, harassment, retaliation and/or related to Entertainer's compensation by Company for services Entertainer performs, and specifically including any claim or cause of action alleging Entertainer is an employee of Company and/or was improperly or insufficiently paid wages under the Fair Labor Standards Act ("FLSA") or any state or local wage and hour law, regardless of whether the covered claims arose or accrued prior or subsequent to Entertainer entering into this Agreement.

On December 13, 2021, the district court issued its Memorandum Opinion and Order as to (i) Ms. James' Amended Motion for Conditional Certification and (ii) Cap Cab's Renewed Motion to Compel Arbitration and Motion to Dismiss, or in the alternative, to Stay Proceedings. (Dkt. 47, JA 123-158). Specifically, the district court denied Cap Cab's Renewed Motion for Arbitration, finding, again, that Cap Cab failed to meet its burden because it failed to produce a valid and enforceable contract establishing a "mutual agreement to arbitrate" between Ms. James and Cap Cab.

The essence of the district court's denial of enforcing the subject Arbitration Agreement (the "Agreement") was based on the fact that the Agreement referenced the signatories thereto as "S. James" and "Cap Cab," with no reference to the operating entity, RPS Holdings, LLC, or any reference to RPS Holdings, LLC, as the owner of the fictitious name, the "Capital Cabaret." The district court found that because the reference to "Cap Cab" was, essentially, not a formal agreement with the club entity, the district court denied the Arbitration Motion. (Dkt. 47, JA 123-158). In the same order, the district Court granted Ms. James's Motion for Conditional Certification. *Id.* In granting conditional certification, the district court ordered:

(i) on or before January 3, 2022, Appellant shall post the (amended) Notice and Consent Form in the Capital Cabaret dressing room.

(ii) by January 3, 2022, provide Appellee with the names, last known mailing addresses, last known home and cellular phone numbers, email addresses, and dates of employment of *all* exotic dancers who worked for Appellant at any time during the period from February 2017 to the present.

(iii) allowing Appellee to "distribute the Notice and Consent Form via first-class mail, email, and text message." *Id.*

On December 29, 2021, Cap Cab filed its Notice of Appeal with the district court. (Dkt. 48, Appendix E). On December 30, 2021, Cap Cab filed its Motion to Stay the district court action pending the outcome of the instant appeal. (Dkt. 50, Appendix F, the "Stay Motion," JA 159-230). The Stay Motion included arbitration agreements executed by Plaintiffs and/or Claimants in ***another*** case styled *Ronique De Sa, Individually, and on Behalf of All Others Similarly Situated v. RPS Holdings, LLC, d/b/a Capital Cabaret, a North Carolina Limited Liability Company, et al.*, Case No. 5:21-cv-00155-D, in the ***Eastern*** District of North Carolina, a second action filed in a different District Court alleging violations of the Fair Labor Standards Act ("FLSA") by different performers at the Cap Cab. Ms. James' ***second***

arbitration agreement was filed only to show the numerosity and consistency of the existence of arbitration agreements for *all* the performers associated with the Cap Cab. Ms. James filed a Response to Appellant's Motion to Stay on January 20, 2022 (Dkt. 53, JA 231-258). The district court granted the Motion to Stay on February 28, 2022. (Dkt. 55, JA 275-289). In Cap Cab's Motion to Stay, Cap Cab confirmed that this second arbitration agreement, discovered while litigation was ongoing, was ***not*** previously proffered to the district court or considered by the district court in denying Cab Cab's Motion to Compel Arbitration. In attaching the second arbitration agreement to its Motion for Stay, Cap Cab was providing information establishing that any "class" that would be noticed would include, not class members, but individuals with arbitration agreements. It was not the goal of Cap Cab to show any lack of confidence in the "Cap Cab" Agreement attached to the Arbitration Motion and the second agreement was not based on any doubt in the legitimacy and enforceability of the "Cap Cab" *original* agreement. This second Agreement was presented in an effort to support the stay requested, based on the authorities (discussed therein) which held that it made no sense to provide notice to a putative class if, in fact, that putative class included only individuals who had executed arbitration agreements.

In granting the Motion to Stay (Dkt. 55, JA 275-289), the district court recognized that Cap Cab's appeal was "non-frivolous" and the pendency of the

instant Appeal required the granting of the Motion to Stay. In addition to Ms. James' opposition to the Motion to Stay, Plaintiff also filed a Motion to Dismiss the instant Appeal (4th Cir. Dkt. 7). Cap Cab filed its response in opposition to the Motion to Dismiss the Appeal (4th Cir. Dkt. 13). The matter was referred to mediation, however Plaintiff declined to reconvene mediation and the instant submittal is tendered in accordance with the most recent briefing deadlines. No decision on the Motion to Dismiss Appeal has been issued. This matter ensues.

## SUMMARY OF THE ARGUMENT

This case comes before this Court on the threshold issue of whether the district court's denial of enforcing the subject Arbitration Agreement (the "Agreement") was lawful and proper, since it was based solely on the fact that the Agreement referenced the signatories thereto as "S. James" and "Cap Cab," with no reference to the operating entity, RPS Holdings, LLC, or any reference to RPS Holdings, LLC, as the owner of the fictitious name, the "Capital Cabaret." It is respectfully asserted that the district court did not properly factor into its denial to send the matter to arbitration the vast preference virtually every Court dealing with the enforceability of arbitration agreements has embraced in finding the merit of sending matters to arbitration if there was any virtually any indication the parties agreed to do so.

Additionally, if there was a dispute over the scope of the Agreement and whether there was any "meeting of the minds" or any factual scenario indicating

either or both parties "performance" under the apparently insufficiently formalized "Cap Cab" Agreement, the district court should have conducted an evidentiary hearing to evaluate the parties' positions and understanding of the scope of the Agreement, to determine is, if fact, the reference to "Cap Cab" was, essentially, not viewed by Ms. James as a formal agreement with the club entity.

Cap Cab asserts Ms. James is bound by the Agreement and all of its terms because Plaintiff and Cap Cab, at the very least, formed an implied in fact contract to arbitrate based on Cap Cab's "offer" and Ms. James' acceptance through conduct, chiefly, by her nearly *six years* of continued operation under all other terms of the Agreement. The arbitration agreement should have been enforced.

## ARGUMENT

## I. STANDARD OF REVIEW

The district court denied Cap Cab's Arbitration Motion (Dkt. 41, JA 59-72) in its Order described above (Dkt. 47, JA 123-158). This Court reviews "the decision to deny a motion for stay and to compel arbitration . . . *de novo*." *Noohi v. Toll Bros., Inc.*, 708 F.3d 599, 602 (4th Cir. 2013) (internal quotation marks omitted) (quoting *Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.,* 380 F.3d 200, 204 (4th Cir. 2004)).

## II. DISCUSSION OF THE ISSUES

## A. THE DISTRICT COURT ERRED BY NOT RECOGNIZING NORTH CAROLINA CONTRACT LAW AND FEDERAL LAW FAVORING ARBITRATION

The district court's denial of enforcing the subject Arbitration Agreement (the "Agreement") was lawful and proper, since it was based solely on the fact that the Agreement referenced the signatories thereto as "S. James" and "Cap Cab," with no reference to the operating entity, RPS Holdings, LLC, or any reference to RPS Holdings, LLC, as the owner of the fictitious name, the "Capital Cabaret." As this Court held in *Habitat Architectural Grp., P.A. v. Capitol Lodging Corp.*, 28 F. App'x 242, 246 (4th Cir. 2002), "North Carolina also has a strong public policy favoring arbitration which **resolves doubt concerning the existence of an arbitration agreement in favor of arbitration**.") (emphasis added).

Additionally, Federal policy strongly favors arbitration, and the FAA represents "a liberal federal policy favoring arbitration agreements" and applies to any arbitration agreement within the coverage of the [FAA]." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Under the FAA, a written arbitration agreement 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' 9 U.S.C. § 2." *Hunt v. Debt Assistance Network, LLC,* 1:18-CV-644 (M.D. N.C. 2019).

By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.' *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) The Court will compel arbitration under the FAA if "(i) the parties have entered into a valid agreement to arbitrate, and (ii) the dispute in question falls within the scope of the arbitration agreement." *Chorley Enterprises, Inc. v. Dickey's Barbecue Restaurants, Inc.*, 807 F.3d 553, 563 (4th Cir 2015) (citing *Muriithi v. Shuttle Express, Inc.*, 712 F.3d 173, 179 (4th Cir. 2013)."

Contracts to arbitrate are not to be avoided while allowing one party to ignore the contract and resort to the Courts, since such a course could lead to prolonged litigation, one of the very risks that the parties, by contracting for arbitration, sought to eliminate. See *Southland Corp. v. Keating*, 465 U.S. 1, 194 S.Ct. 852 (1984).

Here, there was a span of several years receipt of the Agreement where Ms. James continued to perform at the Cap Cab, notably with no complaint about not being categorized (or paid minimum wage) as an employee. Her continued "employment" *and* participation in Cap Cab activities under other material provisions of the Agreement unambiguously manifests her implied consent to the terms.

The FAA's Text Supports Defendant's Position. The FAA, 9 U.S.C. § 1 *et seq.*, supports giving life to arbitration clauses such as the one at issue.

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being <u>satisfied</u> that the issue involved in such suit or proceeding is referrable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C § 3

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which would have jurisdiction under Title 28 in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, **and upon being <u>satisfied</u> that the making of the agreement for arbitration or the failure to comply therewith is not in issue**, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is

within admiralty jurisdiction, the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose. . . .See 9 U.S.C. § 4 (emphasis added).

The requirement is *satisfaction* of the court. Satisfied is defined as "pleased or content" or "persuaded by argument or evidence." *Satisfied*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/satisfied (last visited Dec. 3, 2019). Cap Cab proposes that a court may be satisfied as to this Statute by the application of the applicable North Carolina contract law. Namely, that Ms. James knew of the Agreement and its terms, as shown by her signature, "S. James," on the document. At the very least, Ms. James impliedly consented to the terms of the Agreement by her continued relationship with Cap Cab and operation under the terms for nearly *many years*. Alternatively, Cap Cab proposes that a court may be satisfied as to this statute by the evidence it presented that the Parties did, in fact, reach accord as to the Agreement, which is further discussed *infra*.

Under a contract theory, Cap Cab has demonstrated that "S. James" agreed and is bound by the arbitration agreement. "Where the dispute at issue concerns

contract formation, the dispute is generally for the courts to decide." *Granite Rock Co. v. Int'l Bd of Teamsters*, 561 U.S. 287, 296 (2010). "The Supreme Court has directed that [courts] 'apply ordinary state-law principles that govern the formation of contracts' . . . [t]hus, state law determines questions 'concerning the validity, revocability, or enforceability of contracts generally.'" *Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005) (first quoting *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995); then quoting *Perry v. Thomas,* 482 U.S. 483, 493 n.9 (1987)).

North Carolina law requires three elements for a valid contract "offer, acceptance, and consideration . . . ." *Krusch v. TAMKO Bldg. Prod., Inc.*, 34 F. Supp. 3d 584, 588 (M.D.N.C. 2014). "It is essential to the formation of any contract that there be 'mutual assent of both parties to the terms of the agreement so as to establish a meeting of the minds' . . . [m]utual assent is normally established by an offer by one party and an acceptance by the other." *Creech v. Melnik,* 495 S.E.2d 907, 911-12 (N.C. 1998) (quoting *Snyder v. Freeman,* 266 S.E.2d 593, 602 (N.C. 1980); *see also Harrison v. Wal-Mart Stores, Inc.,* 613 S.E.2d 322, 327 (N.C. Ct. App. 2005) (quoting *Creech*). "Ordinarily one party, by making an offer, assents in advance; the other, upon learning of the offer, assents by accepting it and thereby forms the contract." *Schwarz v. St. Jude Med., Inc.,* 802 S.E.2d 783, 789 (N.C. Ct. App. 2017) (quoting Restatement (Second) of Contracts § 23 cmt. a).

Here, the "offer" is easily established and is not disputed, the only dispute being with whom the Agreement was made, "Cap Cab" being viewed by the district court as not being a formal enough reflection of RPS Holdings, LLC, d/b/a Capital Cabaret. At the very least, the document reflects that there was some "management" related presentation of the Arbitration Agreement to "S. James" sufficient to have acquired her signature in the document.

Regardless of the "informality" of the reference to "Cap Cab" in the Agreement, this situation is akin to an implied-in-fact contract, which North Caroline recognizes. *Creech,* 465 S.E.2d at 912. Implied-in-fact contracts "arise[] where the intent of the parties is not expressed, but an agreement in fact, creating an obligation, is implied or presumed from their acts." *Id.* (citing *Snyder,* 266 S.E.2d at 602). "Except for the method of proving the fact of ***mutual assent***, there is no difference in the legal effect of express contracts and contracts implied in fact." *Id.* (emphasis added). "With regard to contracts implied in fact . . . one looks . . . to the actions of the parties showing an implied offer and acceptance." *Id.* at 912; *see also Ward v. Ward,* 797 S.E.2d 525, 529 (N.C. Ct. App. 2017) (quoting *Creech*); *Archer v. Rockingham Cty.*, 548 S.E.2d 788, 793 (N.C. Ct. App. 2001) (noting implied contracts are "inferred from the circumstances, conduct, acts or relations of the parties showing a tacit understanding"). Here, Cap Cab's "offer," presumably for the business in some fashion or another, specifically made continued "employment"

contingent upon acceptance of the offer. Ms. James continued her "employment" for years after receiving the offer. Continued "employment" after an offer to arbitrate has been held by this Court, other courts in this jurisdiction, North Carolina courts, and other courts throughout the nation to be sufficient to constitute acceptance of the offer, as discussed in detail *infra*. *See, e.g.*, *Lorenzo v. Prime Commc'ns, L.P.,* 806 F.3d 777, 782 (4th Cir. 2015); *Hightower v. GMRI, Inc.*, 272 F.3d 239, 242-43 (4th Cir. 2001); *May v. Higbee Co.,* 372 F.3d 757, 764 (5th Cir. 2004); *Davis v. BSH Home Appliances Corp.,* 4:15-CV-103-FL, 2016 WL 2901741, at *4 (E.D.N.C. May 18, 2016); *King v. Oakwood Home, Inc.*, No. Civ. 1:99cv0059, 2000 WL 1229753 at *4-5 (M.D.N.C. Aug. 3, 2000); *Howard v. Oakwood Homes Corp.,* 516 S.E.2d 879 (N.C. Ct. App. 1999), *review denied*, 539 S.E.2d 288 (1999); *Thomas v. Pub. Storage, Inc.,* 957 F. Supp. 2d 496, 499 n.2 (S.D.N.Y. 2013); *Padro v. Citibank, N.A.,* No. 14-CV-2986 NGG LB, 2015 WL 1802132, at *5 (E.D.N.Y. Apr. 20, 2015).

Mutual assent then is also shown. Mutual assent is determined objectively by the words or actions of the parties and not subjectively. *Howell v. Smith,* 128 S.E.2d 144, 153 (N.C. 1962) (noting "judged by a reasonable standard, manifest an intention to agree in regard to the matter in question, that agreement is established, and it is immaterial what may be the real but unexpressed state of mind on the subject, as mental assent to the promises in a contract is not essential" (quoting 17 C.J.S.

19

Contracts § 32); *Schwarz v. St. Jude Med., Inc.,* 802 S.E.2d 783, 790 (N.C. Ct. App. 2017) ("'secrete, subjective intent is immaterial, so that mutual assent is to be judged only by overt acts and words rather than by hidden, subjective or secret intention of the parties.") (quoting SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS §4:1 (4th ed. 2007).

Regardless of the informality of the Agreement, Plaintiff James cannot escape the terms of the contract she agreed to, especially when the overwhelming evidence shows she received the offer, she accepted the offer by her continued employment, and, thus, the parties achieved a "meeting of the minds." If every party resisting the terms of an implied-in-fact contract could escape enforcement of the terms of the contract by disclaiming awareness of the contract, there would be no implied-in-fact contract doctrine. Plaintiff James contracted to the Arbitration Agreement and should be bound by its terms.

## B. ALTERNATIVELY, CAP CAB SHOULD HAVE BEEN ENTITLED TO AN EVIDENTIARY HEARING ON ANY ISSUE OF MATERIAL FACT AS TO CONTRACT FORMATION.

The issue of "*[w]hether mutual assent is established* and whether a contract was intended between parties are *questions for the trier of fact*." *Creech,* 465 S.E.2d at 912 (quoting *Snyder*, 266 S.E.2d at 602) (internal quotations removed) (emphasis added). These contradicting facts are certainly material as their determination decides whether this case goes before an arbitrator or the court and whether it moves

beyond the discovery stage of litigation; therefore, there exist issues of material fact regarding whether an agreement to arbitrate was formed. In *Lorenzo v. Prime Commc'ns, L.P.*, this Court confirmed the "principle" it laid out in *Hightower* that an employee's "'**continuing employment after learning of the existence of' a company's dispute resolution procedure 'constitutes an employee's agreement to be bound by an arbitration agreement**.'" 806 F.3d 777, 782 (4th Cir. 2015) (emphasis added) (quoting *Hightower v. GMRI, Inc.*, 272 F.3d 239, 242-43 (4th Cir. 2001)).

The district court here, similar to its sister court in the Eastern District of North Carolina in *Lorenzo,* "failed to recognize that principle . . . ." *Id.* Further evincing the notion that the district court's reasonableness standard needs recalibrating is the fact that multiple other courts within the North Carolina jurisdiction seem to understand this Court's principle.[1] S*ee, e.g.*, *Davis v. BSH Home Appliances Corp.*,

---

[1] Indeed, not just in North Carolina. *See, e.g.*, *Thomas v. Pub. Storage, Inc.,* 957 F. Supp. 2d 496, 499 n.2 (S.D.N.Y. 2013) (applying New York law noting, "continued employment, without more, is sufficient to manifest assent to arbitration where an employee received documents that contain such information, continued with her employment, and did not opt out of arbitration.") (internal quotations marks removed) (quoting *Manigault v. Macy's E., LLC,* 318 F. App'x 6, 8 (2d Cir. 2009)); *Padro v. Citibank, N.A.,* No. 14-CV-2986 NGG LB, 2015 WL 1802132, at *5 (E.D.N.Y. Apr. 20, 2015) ("Plaintiff's continued employment with Defendant buttresses the existence of an arbitration agreement between the parties.") (emphasis added); *May v. Higbee Co.*, 372 F.3d 757, 764 (5th Cir. 2004) (applying Mississippi law noting, "[c]ontinuing one's employment after receiving notice that continued employment will constitute assent is a recognized manner of forming a contract.").

4:15-CV-103-FL, 2016 WL 2901741, at *4 (E.D.N.C. May 18, 2016) ("Under North Carolina law, '**continued employment after learning of the existence of**' an **arbitration agreement 'constitutes an employee's agreement to be bound by'** that '**agreement**.") (emphasis added) (quoting *Hightower*, 272 F.3d at 242-43; <u>King v. Oakwood Home, Inc.</u>, No. Civ. 1:99cv0059, 2000 WL 1229753 at *4-5 (M.D.N.C. Aug. 3, 2000) ("Conclusions of Law . . . 2. **Continued employment with actual notice of the implementation of a dispute resolution program evidences an employee's mutual assent to a binding arbitration agreement contained therein** . . . .") (emphasis added); *Howard v. Oakwood Homes Corp.,* 516 S.E.2d 879 (N.C. Ct. App. 1999), *review denied*, 539 S.E.2d 288 (1999).

*Hightower's* principle, which *Lorenzo's* critique of the lower court reiterated, stands alone to demonstrate that Plaintiff James agreed to the arbitration agreement presented to her, regardless of the formality, or lack thereof, in referring to the other party as the "Cap Cab" by her continued employment for *years* afterwards. Simply stated, Ms. James was performing in "the Club's" facility, and both she and "the Club" believed and performed as if the Agreement was fully valid and enforceable.

To the extent there was any question as to the validity and enforceability arbitration agreement with "Cap Cab," or any need to establish who "Cap Cab" really was, or who Ms. James may have interpreted "Cap Cab" to be, particularly in light of her continued employment, the issue should have been decided by tailored

discovery and an evidentiary hearing or "mini-trial" on the issue of arbitrability. *See, e.g.*, *Scales v. SSC Winston-Salem Operating Co., LLC,* No. 1:17CV539, 2017 WL 4467278, at *3 (M.D.N.C. Oct 5, 2017) ("[C]ourts typically grant leave to conduct discovery if the parties dispute the enforceability of an arbitration agreement . . . discovery must remain 'tailored to matters pertinent to the disposition of the petition to compel arbitration and/or stay litigation,' namely 'issues relating to the making and performance of the agreement to arbitrate.'") (quoting *Dillon v. BMO Harris Bank, N.A.,* No. 1:13cv897, 2015 WL 6619972, at *3 (M.D.N.C. Oct. 30, 2015)); Dillon, 2015 WL 6619972, at *3 ("[I]f a party challenges the enforceability of an arbitration agreement, courts generally permit discovery regarding the formation and performance of the arbitration provision.") (citing *Blankenship v. Seventeenth St. Assocs., LLC,* No. 1:11-CV-0627, 2012 WL 10008266, at *1 (S.D.W. Va. Feb. 1, 2012)).

## CONCLUSION

WHEREFORE, for the Foregoing reasons, RPS Holdings, LLC d/b/a Capital Cabaret, referred to herein as "Cap Cab" (for obvious reasons) respectfully requests that this Honorable Court REVERSE the district court's decision to deny the Cap Cab's Arbitration Motion, and REMAND this matter to the district court for entry of an Order directing the Parties to submit all claims to binding arbitration according to the terms of the Arbitration Agreement. Alternatively, Cap Cab

requests that this Honorable Court REVERSE the district court's decision and REMAND this matter to the district court for entry of an Order setting discovery and an evidentiary hearing or "mini-trial" limited to resolve issues of fact material to the threshold issue of arbitrability.

Dated: May 2, 2022                          Respectfully submitted,

/s/ Michael Strickland
Michael Strickland
NC Bar # 17101
MICHAEL W. STRICKLAND & ASSOCIATES
Post Office Box 30787
Raleigh, North Carolina 27622
Telephone No.: (919) 571-3898
Facsimile No.: (919) 571-1038
MStrickland@Stricklandlaw.com

And

/s/ Luke Lirot
Luke Lirot, Esquire
Florida Bar Number 714836
Luke Charles Lirot, P.A.
2240 Belleair Road, Suite 190
Clearwater, Florida 33764
Telephone: (727) 536-2100
Facsimile: (727) 536-2110
Email: luke2@lirotlaw.com
Alternate email addresses:
krista@lirotlaw.com
office@lirotlaw.com
Admitted *pro hac vice*

Counsel for Appellant, RPS Holdings, LLC

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation provided in Fed. R. App. P. 32(a)(7)(B). The foregoing brief contains 6,792 words of Times New Roman (14 point) proportional type. The word processing software used to prepare brief was Word for Windows 10.

/s/ Michael Strickland
Michael Strickland
NC Bar # 17101

## CERTIFICATE OF SERVICE

I hereby certify that the forgoing brief of the Appellant was filed today, May 2, 2022, I electronically filed the foregoing true and accurate copy of **APPELLANT'S BRIEF** with the Court using the CM/ECF system, and I hereby certify that I have thereby electronically served the document on the following:

Gilda A. Hernandez, Esq.
Charlotte C. Smith, Esq.
1020 Southhill Drive, Suite 130
Cary, NC 27513
ghernandez@gildahernandezlaw.com
csmith@gildahernandezlaw.com

s/ Michael Strickland
Michael Strickland
NC Bar # 17101