## IN THE

# 𝕌𝕟𝕚𝕥𝕖𝕕 𝕊𝕥𝕒𝕥𝕖𝕤 ℂ𝕠𝕦𝕣𝕥 𝕠𝕗 𝔸𝕡𝕡𝕖𝕒𝕝𝕤

## FOR THE FOURTH CIRCUIT

SIOBHAN JAMES,
on behalf of herself and all others similarly situated,

*Plaintiff - Appellee,*

v.

RPS HOLDINGS, LLC, d/b/a Capital Cabaret,

*Defendant - Appellant,*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
AT GREENSBORO

## RESPONSE BRIEF OF APPELLEE

Gilda A. Hernandez
Charlotte Smith
LAW OFFICES OF GILDA A. HERNANDEZ, PLLC
Suite 130
1020 Southhill Drive
Cary, NC 27513
919-741-8693
ghernandez@gildahernandezlaw.com
csmith@gildahernandezlaw.com

*Counsel for Plaintiff - Appellee*

# DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

No. 22-1027 Caption: James v. RPS Holdings, LLC, d/b/a Capital Cabaret

Pursuant to FRAP 26.1 and Local Rule 26.1, Siobhan James who is an Appellee, makes the following disclosure:

1. Is party/amicus a publicly held corporation or other publicly held entity?
   ( ) YES             ( X ) NO

2. Does party/amicus have any parent corporations?
   ( )YES             ( X ) NO
   If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?
   ( ) YES             ( X ) NO
   If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?
   ( ) YES             ( X ) NO
   If yes, identify entity and nature of interest:

5. Is party a trade association (amici curiae do not complete this question)?
   ( ) YES             ( X ) NO
   If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding?
   ( ) YES             ( X ) NO
   If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Gilda Adriana Hernandez          Date: May 31, 2022
                Counsel for Appellee

# Table of Contents

**Page**

JURISDICTIONAL STATEMENT ..........................................................................1

ISSUES PRESENTED BY APPELLANT FOR APPEAL .......................................1

STATEMENT OF THE CASE..............................................................................1

    I.    PROCEDURAL HISTORY ....................................................................1

    II.    FACTUAL BACKGROUND ..................................................................3

SUMMARY OF THE ARGUMENT ....................................................................5

STANDARD OF REVIEW ..................................................................................6

ARGUMENT .......................................................................................................7

    I.    APPELLANT'S RENEWED MOTION FAILED TO PROVE THE EXISTENCE OF A VALIDLY FORMED AND ENFORCEABLE ARBITRATION AGREEMENT BETWEEN APPELLANT AND APPELLEE.........................................................8

    II.    APPELLANT CANNOT ENFORCE ITS PROPOSED AGREEMENT THROUGH THEORIES OF AGENCY OR IMPLIED IN FACT CONTRACT...................................................12

        A.    The Evidentiary Record Does Not Meet Appellant's Burden to Prove the Signatory on Behalf of Appellant Acted as Appellant's Agent Binding Appellant to its Proposed Agreement. ................................................................12

        B.    No Validly Formed and Enforceable Implied-in-Fact Contract Exists between Appellant and Appellee Under Which Appellant and Appellee Mutually Agree to Arbitrate Appellee's Claims Against Appellant. .....................15

III.    APPELLANT'S PROPOSED AGREEMENT IS UNENFORCEABLE BECAUSE IT IS IMPOSSIBLE FOR THE PARTIES TO COMPLY WITH THE MANDATORY LANGUAGE OF APPELLANT'S PROPOSED AGREEMENT AND THE DISTRICT COURT FOR THE MIDDLE DISTRICT LACKS THE AUTHORITY TO COMPEL ARBITRATION IN CHARLOTTE, NORTH CAROLINA ................................................. 20

IV.    THE COURT DID NOT ERR IN DENYING APPELLANT'S RENEWED MOTION AND NOT ORDERING DISCOVERY OR AN EVIDENTIARY HEARING ON ARBITRABILITY ........... 24

CONCLUSION ................................................................................. 29

RULE 34 STATEMENT .................................................................. 29

CERTIFICATE OF COMPLIANCE .................................................. 30

CERTIFICATE OF SERVICE .......................................................... 31

# Table of Authorities

## Cases

*Am. Int'l Specialty Lines Ins. Co. v. A.T. Massey Coal Co.*,
  628 F. Supp. 2d 674 (E.D. Va. 2009) ...................................................23

*American Gen. Life & Accident Ins. Co. v. Wood*,
  429 F.3d 83 (4th Cir. 2005) .......................................................................9

*Anderson v. Anderson*,
  145 N.C. App. 453 (2001) .......................................................................11

*Anderson v. Bessemer City*,
  470 U.S. 564 (1985)............................................................................7, 15

*Ansari v. Qwest Communs. Corp.*,
  414 F.3d 1214 (10th Cir. 2005) ...............................................................23

*Arrants v. Buck,*
  130 F.3d 636 (4th Cir. 1997) .....................................................................9

*Baker v. Antwerpen Motorcars, Ltd.*,
  807 F. Supp. 2d 386 (D. Md. 2011).........................................................10

*Bauer-Robertson v. Shiva Fin., LLC*,
  2021 U.S. Dist. LEXIS 68896 (E.D. Va. 2021).......................................28

*Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd*.,
  944 F.3d 225 (4th Cir. 2019) ...................................................................13

*Blount-Midyette & Co. v. Aeroglide Corp*.,
  254 N.C. 484 (1961) .................................................................................21

*Carson v. Giant Food, Inc*.,
  175 F.3d 325 (4th Cir. 1999) .....................................................................8

*Charles Holmes Mach. Co. v. Chalkley*,
  143 N.C. 181 (1906) .................................................................................16

*Charlotte Mecklenburg Bd. of Educ. v. 34 ED, LLC*,
  2020 U.S. Dist. LEXIS 123413 (W.D.N.C. 2020) ...................................23

*Cheech v. Melnik*,
347 N.C. 520 (1998) ...................................................................15

*CIP Constr. Co. v. Western Sur. Co.*,
2018 U.S. Dist. LEXIS 122664 (M.D.N.C. 2018) ..........................10

*Creech v. Melnik*,
495 S.E.2d 907 (N.C. 1998)..........................................................11

*Croom v. Goldsboro Lumber Co., Inc.*,
182 N.C. 217 (1921) ...................................................................15

*Elox Corp. v. Colt Indus., Inc.*,
952 F.2d 395 (4th Cir. 1991) .................................................. 21, 23

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995)......................................................................7

*Foote & Davies, Inc. v. Arnold Craven, Inc.*,
72 N.C. App. 591 (1985) ..............................................................13

*Gaston Cty. Dyeing Mach. Co. v. Northfield Ins. Co.*,
351 N.C. 293 (2000) ...................................................................21

*Gibbs v. Stinson*,
421 F. Supp. 3d 267 (E.D. Va. 2019) *aff'd sub nom. Gibbs v. Sequoia Capital Operations, LLC*, 966 F.3d 286 (4th Cir. 2020) ...................................................25

*Gordon v. TBC Retail Group, Inc.*,
2016 U.S. Dist. LEXIS 106205 (D.S.C. 2016)...................................26

*Granite Rock Co. v. International Bhd. of Teamsters*,
561 U.S. 287 (2010)......................................................................8

*Hancock v. AT&T Co.*,
701 F.3d 1248 (10th Cir. 2012) ....................................................25

*Hemric v. Groce*,
169 N.C. App. 69 (2005) ..............................................................21

*Hightower v. GMRI, Inc.*,
272 F.3d 239 (4th Cir. 2001) ........................................................16

*Hill v. Peoplesoft USA, Inc.*,
   412 F.3d 540 (4th Cir. 2005) ...........................................................9, 10

*Howard v. Ferrellgas Partners, L.P.*,
   748 F.3d 975 (10th Cir. 2014) ................................................................10

*Howard v. Oakwood Homes Corp.*,
   134 N.C. App. 116, *review denied*, 350 N.C. 832 (1999) ..................................16

*Inland Bulk Transfer Co. v. Cummins Engine Co.*,
   332 F.3d 1007 (6th Cir. 2003) ................................................................24

*Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*,
   206 F.3d 411 (4th Cir. 2000) ...................................................................6

*International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*,
   206 F.3d 411 (4th Cir. 2000) .................................................................12

*King v. Oakwood Home, Inc.*,
   2000 U.S. Dist. LEXIS 23605 (M.D.N.C. 2000) ..............................................20

*Koltis v. North Carolina Dep't Human Res.*,
   125 N.C. App. 268 (1997) .....................................................................10

*Martin v. Martin*,
   26 N.C. App. 506, 216 S.E.2d 456 (1975)), *cert. denied*, 359 N.C. 631 (2005).21

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*,
   49 F.3d 323 (7th Cir. 1995) ..................................................................24

*Mgmt. Recruiters Int'l, Inc. v. Bloor*,
   129 F.3d 851 (6th Cir. 1997) .................................................................24

*MicroStrategy, Inc. v. Lauricia*,
   268 F.3d 244 (4th Cir. 2001) ...................................................................6

*Morrissey v. William Morrow & Co.*,
   2739 F.2d 962 (4th Cir. 1984) ...............................................................13

*Noe v. City Nat'l Bank of W. Virginia*,
   828 F. App'x 163 (4th Cir. 2020) ...............................................................9

*Normile v. Miller*,
   313 N.C. 98 (1985) ...........................................................................10

*Patten Grading & Paving, Inc. v. Skanska United States Bldg., Inc.*,
   380 F.3d 200 (4th Cir. 2004) ..............................................................6

*Penske Logistics LLC v. Freight Drivers & Helpers Local Union No. 557 Pension Fund*,
   820 F. App'x 179 (4th Cir. 2020) .......................................... 7, 14, 15

*Raymond James Fin. Servs. v. Cary*,
   709 F.3d 382 (4th Cir. 2013) ..............................................................8

*Rota-McLarty v. Santander Consumer USA, Inc.*,
   700 F.3d 690 (4th Cir. 2012) ..............................................................7

*Rowland v. Sandy Morris Fin. & Estate Planning Servs., LLC*,
   993 F.3d 253 (4th Cir. 2021) ........................................................8, 10

*Short v. Circus Trix Holdings, LLC*,
   274 N.C. App. 311 (2020) .................................................................12

*Silvers v. Horace Mann Ins. Co.*,
   324 N.C. 289 (1989) ...........................................................................11

*Simula, Inc. v. Autoliv, Inc.*,
   175 F.3d 716 (9th Cir. 1999) .............................................................26

*Sky Angel U.S., LLC v. Discovery Commc'ns, LLC*,
   885 F.3d 271 (4th Cir. 2018) ........................................................7, 14

*State v. Philip Morris, USA, Inc.*,
   359 N.C. 763 (2005) ...........................................................................11

*Troy & N.C. Gold Mining Co. v. Snow Lumber Co.*,
   170 N.C. 273 (1915) ...........................................................................14

*United States ex rel. Red Hawk Contracting, Inc. v. MSK Constr., Inc.*,
   2018 U.S. Dist. LEXIS 80019 (M.D.N.C. 2018) ...............................23

*Woods v. Nationwide Mut. Ins. Co.*,
   295 N.C. 500 (1978) ...........................................................................21

*Yancey v. Equifax Info. Servs., LLC,*
  2019 U.S. Dist. LEXIS 154835 (E.D. Va. 2019)..................................................26

**Statutes**

28 U.S.C. § 113(c) .......................................................................23

28 U.S.C. § 1331 ...........................................................................1

29 U.S.C. § 201 *et seq*..................................................................2

9 U.S.C. § 4 ............................................................................ 23, 26

N.C. Gen. Stat. § 95-25.6 *et seq*...................................................2

Appellee Siobhan James ("Appellee"), through counsel, submits her Response to the Opening Brief ("O.B.") submitted by Appellant RPS Holdings, LLC d/b/a Capital Cabaret Gentlemen's Club ("Appellant").

## JURISDICTIONAL STATEMENT

Appellee agrees with Appellant's statement as to the district court's federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction over the pendent state law claims arising from the common nucleus of operative facts. [O.B. at 9]. Moreover, consistent with this Court's May 18, 2022, Order, the Appellant's renewed motion to compel arbitration is properly before the Court. [Doc. 19].

## ISSUES PRESENTED BY APPELLANT FOR APPEAL

(1) Whether the District Court erred by not finding the arbitration agreement enforceable and failed to apply applicable contract law to find the arbitration agreement enforceable.

(2) Whether there existed a disputed issued of material fact, such that the District Court was obligated to allow discovery and conduct an evidentiary hearing on the issue of arbitrability.

## STATEMENT OF THE CASE

### I.     PROCEDURAL HISTORY

On February 11, 2020, Appellee, on behalf of herself and other similarly situated individuals, filed a Class and Collective Action Complaint against

Appellant[1] in the United States District Court for the Middle District of North Carolina. Appellee brought this as a collective action seeking unpaid minimum wages, unpaid overtime compensation, back-pay, restitution, liquidated damages, reasonable attorney's fees and costs, and all related penalties and damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* Defendant had a systemic company-wide policy, pattern, or practice of misclassifying employees as "independent contractors." [JA 16][2] Appellee seeks individual and class-wide recovery for payment of all earned, accrued, and unpaid straight and overtime promised wages, and for other relief as appropriate, under the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.6 *et seq. See id.*

On March 13, 2020, Appellant filed a Motion to Compel Appellee's claims to the forum of arbitration.[3] [JA 64]. On March 1, 2021, the District Court entered a "Text Order" denying Appellant's Motion, without prejudice. In issuing its "Text Order," the District Court observed Appellant's proposed arbitration agreement ***did not*** represent a mutual agreement to arbitrate claims between Appellee and RPS Holding, LLC, the correct legal name of Appellant.[4]

---

[1] In Appellee's Complaint, Appellee mistakenly misidentifies Appellant as PRS Holdings, LLC.

[2] Hereinafter, references to specific page numbers are to ECF-assigned page numbers, rather than internal document pagination inserted by Appellant in the joint appendix.

[3] Appellant filed its Motion as and on behalf of the misidentified entity, PRS Holdings, LLC.

[4] The District Court further directed Appellee to submit an Amended Complaint correctly identifying Appellant under its proper legal name, RPS Holdings, LLC.

On March 4, 2021, Appellee filed her First Amended Complaint therein seeking individual and class/collective relief against Appellant under its correct legal identity, RPS Holdings, LLC. [JA 16-46]. In response, on March 19, 2021, Appellant filed its Renewed Motion to Compel Appellee's claims to the forum of arbitration ("Renewed Motion"). [JA 64-71]. On December 13, 2021, the District Court issued a Memorandum Opinion and Order, in relevant part, denying Appellant's Renewed Motion to Compel Arbitration. [JA 127-163]. In denying Appellant's Renewed Motion, the District Court again found that Appellant failed to produce a validly formed and enforceable contract establishing a ***mutual agreement to arbitrate*** between Appellee and Appellant. *Id*.

On December 29, 2021, Appellant timely filed its Notice of Appeal with the District Court. Thereafter, consistent with the briefing schedule set by this Court, on May 2, 2022, Appellant timely submitted its Opening Brief seeking an Order from this Court reversing and remanding the District Court's Order on Appellant's Renewed Motion, to which Appellee herein responds.

## II.   FACTUAL BACKGROUND

In support of its Renewed Motion, Appellant produces three (3) documents in a single Exhibit. The first document is a copy of Appellee's United States Passport. [JA 72]. The second document is a copy of Appellant's proposed arbitration agreement, upon which Appellant seeks to compel Appellee's claims against

Appellant to arbitration. [JA 73-75]. The final document is a signature page acknowledging receipt of an Entertainer Orientation Packet. [JA 70].[5]

A review of Appellant's proposed agreement evinces:

(i)     The proposed agreement is made by and between ***Cap Cab*** and S. James;

(ii)    The proposed agreement makes ***no reference*** to the Appellant, "RPS Holdings, LLC," as a party to the agreement;

(iii)   The proposed agreement ***fails*** to include language that gives an objective reader a reasonable inference, belief, or understanding that Cap Cab is, in fact, RPS Holdings, LLC;

(iv)    The unknown signatory of the proposed agreement on behalf of Cap Cab ***does not*** include an indication as to the identity of the signing party;

(v)     The unknown signatory of the proposed agreement on behalf of Cap Cab ***does not*** identify that individual's role, title, or the potential express    or implied agency capacity of the signing party to or for "Cap Cab"; and

(vi)    The unknown signatory of the proposed agreement on behalf of Cap Cab ***does not*** indicate express or implied agency on behalf of Appellant RPS Holdings, LLC.

Further, the mandatory venue and forum selection clauses contained within

Appellant's proposed agreement require as follows:

---

[5] Notwithstanding that the District Court had previously warned Appellant that its proffer in support of its prior Motion to Compel lacked sufficient evidentiary support to prove the existence of a validly formed and legally binding agreement to arbitrate formed between Appellant and Appellee, Appellant filed its Renewed Motion without additional documents, declarations, or other proof not previously submitted to the District Court. In other words, Appellant has been afforded ***two*** "bites at the apple" to submit evidence meeting its burden of proof on its Renewed Motion and has failed, *twice.*

(i)      Section 2 of Appellant's proposed agreement dictates that the parties shall be submitted exclusively to and determined exclusively by binding arbitration ***in Charlotte, North Carolina***; and

(ii)     Section 12 of Appellant's proposed agreement dictates that any arbitration hearing arising under the proposed agreement shall be held at a location in ***Charlotte, North Carolina within twenty-five miles of the last place Entertainer provided services to Company***.

*Id*. at 2-3 (emphasis added).

On December 13, 2021, the District Court issued a well-reasoned Memorandum Opinion and Order denying Appellant's Renewed Motion. [JA 128-162]. In so doing, the District Court accurately and correctly adjudged that Appellant failed to meet its burden to prove the existence of a valid and enforceable contract establishing a ***mutual agreement to arbitrate*** between Appellee and Appellant. *Id*.

## SUMMARY OF THE ARGUMENT

Appellant seeks reversal and remand of the District Court's December 13, 2021, Order denying Appellant's Renewed Motion to Compel Arbitration and Motion to Dismiss, or in the alternative, to Stay Proceedings ("Renewed Motion"). In its Order, the District Court denied Appellant's Renewed Motion based on its factual finding that Appellant failed to produce a valid and enforceable contract establishing ***a mutual agreement to arbitrate*** between Appellee and Appellant. Appellant's Motion raises no compelling argument challenging the District Court's well-reasoned and factually and legally accurate finding. Specifically, Appellant has failed to establish a valid, enforceable contract existed for the following reasons: (1)

no valid, enforceable arbitration agreement was formed between Appellant and Appellee; (2) no theory of agency may apply to enforce the agreement as the evidentiary record does not support a finding that any signatory to the agreement acted as Appellant's agent, binding Appellant to the proposed agreement; (3) no agreement existed wherein Appellee and Appellant mutually agreed to arbitrate Appellee's claims specifically against Appellant; and (4) the District Court for the middle district of North Carolina lacks the authority to compel arbitration in the mandatory location outlined in the proffered agreement, Charlotte, North Carolina. For these reasons, and as further described below, this Court should affirm the District Court's Order.

## <u>STANDARD OF REVIEW</u>

This Court reviews the legal conclusions of a District Court regarding Appellant's motion to compel arbitration *de novo*. *Patten Grading & Paving, Inc. v. Skanska United States Bldg., Inc*., 380 F.3d 200, 204 (4th Cir. 2004) (citing *MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 250 (4th Cir. 2001)). However, the factual determinations underlying the District Court's conclusions must be entitled to deference and are reviewed by this Court only for clear error. *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416 (4th Cir. 2000) (reviewing for clear error "factual findings that form the basis of a decision" as to whether a dispute is arbitrable") (citing *First Options of Chicago, Inc. v. Kaplan*,

514 U.S. 938, 947-48 (1995)); *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 701 (4th Cir. 2012).

"Clear error requires 'a definite and firm conviction that a mistake has been committed.'" *Penske Logistics LLC v. Freight Drivers & Helpers Local Union No. 557 Pension Fund*, 820 F. App'x 179, 186 (4th Cir. 2020) (quoting *Sky Angel U.S., LLC v. Discovery Commc'ns, LLC*, 885 F.3d 271, 279 (4th Cir. 2018)). "'This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently.'" *Id*. (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985)). As discussed below, the factual findings of the District Court underlying its denial of Appellant's Renewed Motion were objectively correct and cannot reasonably be described or adjudged as clearly erroneous. To this end, in its analysis, this Court should properly give deference to all factual findings of the District Court.

## **ARGUMENT**

This is a case of contract interpretation. The District Court denied Appellant's Renewed Motion based upon its factual finding that Appellant failed to meet its burden to prove that Appellee and Appellant validly formed or otherwise ***mutually agreed*** to arbitrate Appellee's claims against Appellant. No argument presented in Appellant's Opening Brief identifies err or deficiency in the District Court's factual findings or legal conclusion. For this reason, as further discussed and supported in

this section, this Court should affirm the Order of the District Court denying Appellant's Renewed Motion.

## I. APPELLANT'S RENEWED MOTION FAILED TO PROVE THE EXISTENCE OF A VALIDLY FORMED AND ENFORCEABLE ARBITRATION AGREEMENT BETWEEN APPELLANT AND APPELLEE.

"Generally, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Carson v. Giant Food, Inc.*, 175 F.3d 325, 329 (4th Cir. 1999) (internal quotation omitted). However, "[t]he presumption [in favor of arbitration] . . . applies ***only*** when 'a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand,' not when there remains a question as to whether an agreement even exists between the parties in the first place." *Raymond James Fin. Servs. v. Cary*, 709 F.3d 382, 386 (4th Cir. 2013) (quoting *Granite Rock Co. v. International Bhd. of Teamsters*, 561 U.S. 287, 301 (2010)) (emphasis supplied). To this point, this Court recently directed that neither the FAA nor its accompanying presumption favoring arbitration implies that courts should "grant blindly all motions to compel arbitration." *Rowland v. Sandy Morris Fin. & Estate Planning Servs., LLC*, 993 F.3d 253, 257 (4th Cir. 2021).[6]

---

[6] A judicial determining as to the existence of a valid and enforceable "written agreement that includes an arbitration provision" exists "requires that the District Court - rather than an arbitrator - decide whether the parties have formed an agreement to arbitrate." *Berkeley Cty. Sch. Dist. v. Hub Int'l. Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019) (interpreting 9 U.S.C. § 4)).

To succeed on its Renewed Motion, Appellant was required to prove each of the following elements, under the summary judgment standard: (1) the existence of a dispute between the parties, (2) *a written agreement that includes an arbitration provision which purports to cover the dispute*, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of [the other party] to arbitrate the dispute. *American Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005) (internal quotation marks omitted); *see also Noe v. City Nat'l Bank of W. Virginia*, 828 F. App'x 163, 166 (4th Cir. 2020) (unpublished) (noting that the court may consider evidence on a motion to compel arbitration, as it would on summary judgment). Thus, the question before this Court is whether Appellant's Renewed Motion and evidentiary proffer prove the existence of a validly formed and binding *mutual agreement* between Appellant and Appellee to arbitrate Appellee's claims against Appellant. *See Arrants v. Buck,* 130 F.3d 636, 640 (4th Cir. 1997).

The validity or enforceability of arbitration agreements is a matter of contract law. *See Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005). As such, "[e]ven though arbitration has a favored place, there must still be an underlying agreement between the parties to arbitrate." *Arrants*, 130 F.3d at 640. Thus, "before the [FAA's] heavy hand in favor of arbitration swings into play, the parties

themselves must agree to have their disputes arbitrated." *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 977 (10th Cir. 2014).

Whether a binding and enforceable agreement to arbitrate was formed is a question of ordinary state-law principles that govern the formation of contracts. *See Hill*, 412 F.3d at 543; *Baker v. Antwerpen Motorcars, Ltd.*, 807 F. Supp. 2d 386, 388-89 & n.13 (D. Md. 2011) (noting Maryland's *lex loci contractus rule* and applying Maryland law to contract formation issue)). Here, North Carolina is the locale where Appellant employed Appellee, and the locale where Appellant asserts Appellee signed Appellant's proposed arbitration agreement. Consequently, the question of whether Appellant's proposed agreement constitutes a validly formed, binding, and enforceable contract to arbitrate between Appellant and Appellee is governed by North Carolina law. *See CIP Constr. Co. v. Western Sur. Co.*, 2018 U.S. Dist. LEXIS 122664, at *5 (M.D.N.C. 2018).

"For a valid contract to be formed, the two parties must 'assent to the same thing in the same sense, and their minds meet as to all terms.'" *Rowland*, 993 F.3d at 258-59 (quoting *Normile v. Miller*, 313 N.C. 98, 103 (1985)). Under North Carolina law, a valid contract "requires offer, acceptance, consideration and no defenses to formation." *Koltis v. North Carolina Dep't Human Res.*, 125 N.C. App. 268, 271 (1997). This is mandatory because, "[i]t is essential to the formation of any contract that there be mutual assent of both parties to the terms of the agreement

so as to establish a meeting of the minds." *Creech v. Melnik*, 495 S.E.2d 907, 911–12 (N.C. 1998) (quotation marks omitted). Further, in determining if an agreement to arbitrate exists, North Carolina law instructs "the [C]ourt to examine the language of the contract itself for indications of the parties' intent . . .." *State v. Philip Morris, USA, Inc.*, 359 N.C. 763, 773 (2005). The court must give the contract's language its ordinary meaning and presume that the parties intended the plain meaning of the words, absent evidence to the contrary. *Anderson v. Anderson*, 145 N.C. App. 453, 458 (2001) (citations omitted). Finally, when confronted with ambiguity in a contract, North Carolina courts construe the contract "against the drafter, which had the best opportunity to protect its interests." *Silvers v. Horace Mann Ins. Co.*, 324 N.C. 289, 295 (1989).

As discussed *supra.*, Appellant failed to produce a written agreement, signed by Appellee *and* Appellant, under which Appellant *and* Appellee *mutually agree* to arbitrate Appellee's claims against Appellant. In fact, Appellant's proposed agreement makes no reference to the Appellant, "RPS Holdings, LLC," as a party to its proposed agreement. Further, Appellant has failed to proffer any evidence supporting that Appellee and Appellant ***mutually agreed*** to arbitrate Appellee's claims against Appellant. In other words, Appellant acted at its own peril by presenting the District Court with insufficient evidentiary support to prove Appellant and Appellee ***mutually agreed*** to arbitrate claims between Appellant and Appellee.

For this reason, the District Court properly denied Appellant's Renewed Motion and the finding should be affirmed by this Court.

## II. APPELLANT CANNOT ENFORCE ITS PROPOSED AGREEMENT THROUGH THEORIES OF AGENCY OR IMPLIED IN FACT CONTRACT.

### A. The Evidentiary Record Does Not Meet Appellant's Burden to Prove the Signatory on Behalf of Appellant Acted as Appellant's Agent Binding Appellant to its Proposed Agreement.

Insofar as Appellant was *not* a signatory to its proposed agreement, the District Court explored beyond the four corners of Appellant's proposed agreement and considered whether Appellant held the contractual right to compel arbitration as a non-signatory. In so doing, the District Court considered whether Appellant held the right to enforce its proposed agreement under a theory of agency. *See International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416-17 (4th Cir. 2000).

"An agent may contractually bind a principal to a third party if the third party can establish an agency relationship between the principal and agent." *Short v. Circus Trix Holdings, LLC*, 274 N.C. App. 311, 318 (2020). "A principal is liable upon a contract duly made by its agent with a third person in three instances: [(i)]when the agent acts within the scope of his or her actual authority; [(ii)] when a contract, although unauthorized, has been ratified; or [(iii)] when the agent acts within the scope of his or her apparent authority, unless the third person has notice

12

that the agent is exceeding actual authority." *Foote & Davies, Inc. v. Arnold Craven, Inc.*, 72 N.C. App. 591, 595 (1985). As a general rule, "if [an] agent . . . lacks authority to bind his principal . . . to a contract with a third party . . . yet purports to do so anyway, **no contract is formed between the principal and the third party**." *Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 238 (4th Cir. 2019) (interpreting contract governed by South Carolina law) (emphasis supplied).

In presenting its Renewed Motion, Appellant contends Appellant (RPS Holdings, LLC) is one in the same as "Cap Cab." In furtherance of this argument, Appellant contends the unknown and unidentified signatory on behalf of "Cap Cab" signed Appellant's proposed agreement as an agent on behalf of Appellant. This theory, however, **is not** supported by any evidence proffered by Appellant in support of its Renewed Motion. Rather, Appellant's proposed agreement provides no basis for an express or implied agency relationship between the individual that signed Appellant's proposed agreement for "Cap Cab" and Appellant. This point is amplified because:

> \*     No document or other evidence exists in the record supporting or affirming that Appellant has **ever** done business in the State of North Carolina as "Cap Cab;"[7] and

---

[7] The only support Appellant makes in its Renewed Motion supporting its use of the trade name "Cap Cab" is by way of unsupported argument by Appellant's counsel. This is insufficient to meet Appellant's burden on its Renewed Motion because **argument of counsel is not evidence.** *Morrissey v. William Morrow & Co.*, 2739 F.2d 962, 967 (4th Cir. 1984) ("Such 'argument of counsel is not evidence.'"). (emphasis supplied).

\*      Appellant **did not** file a Certificate of Assumed Name for use of "Cap Cab" with the Wake County, North Carolina, Register of Deeds.

The undeniable fact is Appellant's proposed agreement fails, *in toto*, to identify "RPS Holdings, LLC," "Capital Cabaret," or "RPS" as a contracting party to Appellant's proposed agreement. Further, Appellant failed to produce any evidence creating an express or implied agency or any legal relationship between "Cap Cab" and Appellant. This total absence of Appellant's express or implied agency authority on behalf of Cap Cab or identification of Appellant, by name, as the intended beneficiary under its proposed agreement is fatal to Appellant's attempt to procure rights under the proposed agreement or motion the court to enforce the same. *See Troy & N.C. Gold Mining Co. v. Snow Lumber Co.*, 170 N.C. 273, 277-78 (1915).

Finally, this Court must observe the District Court's denial of Appellant's Renewed Motion was not the product of a narrow legal determination, but instead was the result of a thorough factual analysis and finding. As such, this Court may reverse the District Court's finding only upon a finding that committed clear err such that this Court can have "'a definite and firm conviction that a mistake has been committed[,]'" requiring reversal. *Penske Logistics LLC*, 820 F. App'x at 186 (quoting *Sky Angel U.S., LLC*, 885 F.3d at 279). As such, even if this Court "'is

convinced that it would have decided the case differently[,]" it must affirm the District Court's ruling. *Id*. (quoting *Anderson,* 470 U.S. at 573).

Here, the factual findings of the District Court underlying its denial of Appellant's Renewed Motion were objectively correct and cannot reasonably be described or adjudged as clearly erroneous. To this end, in its analysis, this Court should properly give deference to all factual findings of the District Court. Based on this deference and the Court's legally sound analysis of well-settled North Carolina contract law, this Court should affirm the District Court's order denying Appellant's Renewed Motion.

**B.** **No Validly Formed and Enforceable Implied-in-Fact Contract Exists between Appellant and Appellee Under Which Appellant and Appellee Mutually Agree to Arbitrate Appellee's Claims Against Appellant.**

Appellant argues this District Court erred because an implied-in-fact contract was formed between Appellant and Appellee to arbitrate Appellee's claims against Appellant. This is argument is demonstrably false.

North Carolina recognizes implied-in-fact contracts, which "arise[] where the intent of the parties is not expressed, but an agreement in fact, creating an obligation, is implied or presumed from their acts." *Cheech v. Melnik*, 347 N.C. 520, 526-27 (1998). No contract, however, is formed without an agreement to which at least ***two parties*** manifest an intent to be bound. *Croom v. Goldsboro Lumber Co., Inc*., 182 N.C. 217, 220 (1921) (mutual assent is an "essential element" of every contract)

(emphasis supplied); *Charles Holmes Mach. Co. v. Chalkley*, 143 N.C. 181, 183

(1906) ("The first and most essential element of an agreement is the consent of the

parties, an *aggregatio mentium*, or meeting of two minds in one and the same

intention, and until the moment arrives when the minds of the parties are thus drawn

together, the contract is not complete, so as to be legally enforceable.").

Appellee does not dispute that, under certain circumstances, continuing

employment after learning of the existence of mandatory arbitration requirement

between the employer and the employee constitutes an employee's agreement to be

bound by an arbitration agreement. *See Hightower v. GMRI, Inc.*, 272 F.3d 239,

242-43 (4th Cir. 2001); *Howard v. Oakwood Homes Corp*., 134 N.C. App. 116,

*review denied*, 350 N.C. 832 (1999). The dispute, however, is not whether Appellant

could potentially enforce a theoretical arbitration by way of an implied-in-fact

contract theory. Instead, the question is whether Appellant's Renewed Motion and

the evidentiary record supports this theory, under the summary judgment standard.

On this question, Appellant has failed.

In attempting to shoehorn Appellant's manufactured conclusions to meet

Appellant's theory of an implied-in fact contract, Appellant presents unsupported

argument of its counsel in its Opening Brief as follows:

> Here, there was a span of several years receipt of the Agreement where
> Ms. James continued to perform at the Cap Cab, notably with no
> complaint about not being categorized (or paid minimum wage) as an
> employee. Her continued "employment" and participation in Cap Cab

activities under other material provisions of the Agreement unambiguously manifests her implied consent to the terms.

O.B. at 22.

> At the very least, Ms. James impliedly consented to the terms of the Agreement by her continued relationship with Cap Cab and operation under the terms for nearly many years. Alternatively, Cap Cab proposes that a court may be satisfied as to this statute by the evidence it presented that the Parties did, in fact, reach accord as to the Agreement ....

*Id.* at 24.

> Here, the "offer" is easily established and is not disputed, the only dispute being with whom the Agreement was made, "Cap Cab" being viewed by the district court as not being a formal enough reflection of RPS Holdings, LLC, d/b/a Capital Cabaret. At the very least, the document reflects that there was some "management" related presentation of the Arbitration Agreement to "S. James" sufficient to have acquired her signature in the document.

*Id.* at 26.

> Here, Cap Cab's "offer," presumably for the business in some fashion or another, specifically made continued "employment" contingent upon acceptance of the offer. Ms. James continued her "employment" for years after receiving the offer.

*Id.* at 26-27.

In presenting the foregoing fact-based conclusions, Appellant cites no portion

of the evidentiary record, because no evidence supporting Appellant's conclusions

were proffered by Appellant.[8]   Rather, actual evidence before the District Court on

Appellant's Renewed Motion:

(i)      Contain no verification or corroboration that Appellee received a
copy of Appellant's proposed agreement;

(ii)     Contain no verification or corroboration that Appellee never
complained regarding her non-employee misclassification; or

(iii)    Contain no verification or corroboration that Appellee had
knowledge, understood, or was otherwise in agreement to be bound
to or with Appellant (RPS Holdings, LLC) regarding the terms of
Appellant's proposed agreement.

As discussed *supra*., Appellant's proposed agreement (serving as the basis of

Appellant's implied-in-fact contract argument) was never a ***mutual agreement***

between Appellant (RPS Holdings, LLC) and Appellee to arbitrate claims between

Appellee and Appellant.  Instead, Appellant is *not* a party to its proposed agreement

and holds no legal or contractual right to enforce its terms.  As such, Appellee's

employment or continued employment with Appellant does not give rise to a right

by Appellant to enforce its proposed agreement, to which Appellant and Appellee

did not mutually agreement and to which Appellant is ***not*** a party.

Moreover, as discussed *supra*., the evidentiary record contains no support for

Appellant's theory that Cap Cab and Appellant (RPS Holdings, LLC) are one in the

---

[8] Appellant's counsel's argument and theories of the case do not create evidence
Appellant failed to produce to the District Court in support of its Renewed Motion.

same for the purpose of contract formation.  In submitting its Renewed Motion,

Appellant produced no evidence

(i)     That identifies the signatory on behalf of Cap Cab;

(ii)    That provides proof or other admissible confirming or supporting Appellant's the unidentified and unknown signatory was, in fact, Appellant's "management," much less its authorized agent;

(iii)   That describes or corroborates how or why Appellee understood Cap Cab and Appellant were one in the same; or

(iv)    That identifies, confirms, or supports Appellant's alleged facts and circumstances resulting in Appellee's signature on Appellant's proposed agreement, much less how Appellee's signature on a document counter-signed by Cap Cab supports Appellant's position that Appellant understood or agreed her signature or the totality of this document represents Appellant and Appellee's mutual agreement that Appellee will arbitrate her claims against Appellant (RPS Holdings,       LLC),      a     non-identified and/or referenced third party.

"[I]t is essential to a bargain that each party manifest assent with reference to

the manifestation of the other." *Second Restatement of Contract* at § 23. "Since the

acceptance must have reference to the offer it is ordinarily necessary that the offeree

have knowledge of the offer." *Id*. at § 35.   "The offeree's conduct ordinarily

constitutes an acceptance in such cases *only if he knows of the offer*." *Id*. at § 53

(emphasis supplied).  Here, Appellant failed to produce evidence that Appellee had

actual knowledge of Appellant's alleged "offer" that in exchange for employment,

Appellee must agree to arbitrate claims *between Appellee and Appellant*.  As such,

no act by Appellee can be deemed an acceptance of said unknown offer. *See King v. Oakwood Home, Inc*., 2000 U.S. Dist. LEXIS 23605, at *8-9 (M.D.N.C. 2000).

Ultimately, Appellant cannot and does not identify any evidentiary support confirming a ***mutual agreement*** between Appellant and Appellee to arbitrate Appellee's claims against Appellant. For this reason, the District Court correctly denied Appellant's Renewed Motion based upon the correct evidentiary finding that Appellant failed to prove the existence of a ***mutual agreement to arbitrate*** between Appellee and Appellant.

**III. APPELLANT'S PROPOSED AGREEMENT IS UNENFORCEABLE BECAUSE IT IS IMPOSSIBLE FOR THE PARTIES TO COMPLY WITH THE MANDATORY LANGUAGE OF APPELLANT'S PROPOSED AGREEMENT AND THE DISTRICT COURT FOR THE MIDDLE DISTRICT LACKS THE AUTHORITY TO COMPEL ARBITRATION IN CHARLOTTE, NORTH CAROLINA.**

In reaching its ruling, the District Court did not rule directly on Appellee's alternative argument that Appellant's proposed agreement is unenforceable because (i) it is impossible for Appellee and Appellant to arbitrate Appellee's claim against Appellant both (a) in Charlotte and (b) within Twenty-Five (25) miles of Morrisville, North Carolina and (ii) the United States District Court for the Middle District of North Carolina does not have authority to compel arbitration in Charlotte, North Carolina. *See* Memorandum Opinion at Footnote 1. To the extent this Court is persuaded of the potential validity of formation of Appellant's proposed agreement,

this Court must still affirm the District Court's Order, the Parties performance under the mandatory language of Appellant's proposed agreement is impossible and, as such, unenforceable.

"Where the language of a contract is plain and unambiguous, the construction of the agreement is a matter of law; and the court may not ignore or delete any of its provisions, nor insert words into it, but must construe the contract as written, in the light of the undisputed evidence as to the custom, usage, and meaning of its terms." *Hemric v. Groce*, 169 N.C. App. 69, 76 (2005) (quoting *Martin v. Martin*, 26 N.C. App. 506, 508, 216 S.E.2d 456, 457-58 (1975)), *cert. denied*, 359 N.C. 631 (2005)). If the language is clear and only one reasonable interpretation exists, "courts must enforce the contract as written; they may not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein." *Gaston Cty. Dyeing Mach. Co. v. Northfield Ins. Co.*, 351 N.C. 293, 300 (2000) (quoting *Woods v. Nationwide Mut. Ins. Co.*, 295 N.C. 500, 506 (1978)). Further, it is well settled that an impossibility of performance under the clear and unambiguous language of a contract shall excuse performance. *See Blount-Midyette & Co. v. Aeroglide Corp.*, 254 N.C. 484 (1961).

When assessing whether to compel arbitration under the FAA, "the [D]istrict [C]ourt must, [] apply a forum selection clause contained in the agreement if such a clause exists." *Elox Corp. v. Colt Indus., Inc.*, 952 F.2d 395 (4th Cir. 1991)

(unpublished) ("The [FAA] provides that a [D]istrict [C]ourt deciding a motion to compel arbitration shall defer to the terms of the parties' agreement. The [D]istrict [C]ourt must, therefore, apply a forum selection clause contained in the agreement if such a clause exists. Further, if a court orders arbitration, the arbitration must be held in the same district as the court.").

Here, the plain and unambiguous language of Appellant's proposed agreement sets a mandatory limitation on the forum of the arbitration to "a location in Charlotte, North Carolina within twenty-five (25) miles of the last place Entertainer provided services to Company, unless the parties agree otherwise." [JA 73]. Appellee worked for Appellant exclusively at its Capital Cabaret Gentlemen's Club in Morrisville, North Carolina, approximately 150 miles from Charlotte, North Carolina. It is axiomatic that no location exists that is *both* within Charlotte, North Carolina *and* lies within 25 miles of Appellant's Capital Cabaret Gentlemen's Club, located in Morrisville, North Carolina Gentleman's Club. Thus, in consideration of this mandatory forum selection language, it was and remains impossible for the District Court to enforce Appellant's proposed agreement and compel the Parties to arbitration in conformance with its express mandatory terms. Consequently, the Court must find Appellee's compliance with Appellant's arbitration agreement is *per se* impossible, and excuse Appellee from performance in accordance with its clear and unambiguous terms.

Further, even if Appellee and Appellant did agree to arbitrate claims in Charlotte, North Carolina, the United States District Court for the Middle District of North Carolina is without authority to compel an arbitration to proceed in Charlotte, North Carolina, as Charlotte is within the Jurisdiction of the United States District Court for the Western District of North Carolina. *See Elox Corp.*, 952 F. 2d 395 (table); 28 U.S.C. § 113(c) (identifying Charlotte as part of the Western District of North Carolina). Under § 4 of the FAA, when granting a motion to compel arbitration, "[t]he hearing and proceedings, under such [arbitration] agreement, shall be within the district in which the petition for an order directing such arbitration is filed." *See United States ex rel. Red Hawk Contracting, Inc. v. MSK Constr., Inc.*, 2018 U.S. Dist. LEXIS 80019, at *5 (M.D.N.C. 2018) (citing 9 U.S.C. § 4). "**Where the parties have agreed to arbitrate in a particular forum, *only a district court in that forum has the authority to compel arbitration under § 4 of the FAA.***" *See Am. Int'l Specialty Lines Ins. Co. v. A.T. Massey Coal Co.*, 628 F. Supp. 2d 674, 683 (E.D. Va. 2009); *Charlotte Mecklenburg Bd. of Educ. v. 34 ED, LLC*, 2020 U.S. Dist. LEXIS 123413, at *3 (W.D.N.C. 2020) (noting the majority of courts in the Fourth Circuit has consistently enforced the position that "a court may not compel arbitration outside its district").[9]

---

[9] *See also Ansari v. Qwest Communs. Corp.,* 414 F.3d 1214, 1220–21 (10th Cir. 2005) (finding § 4 of the FAA prohibits a court from compelling arbitration outside its geographic jurisdiction and affirming district court's order denying

Here, Appellant's Renewed Motion asks the District Court to enforce Appellant's proposed agreement, and compel the Parties to arbitration in Charlotte, North Carlina, a locale outside the jurisdiction outside the jurisdiction of the United States District Court for the Middle District of North Carolina. The District Court *did not and does not* have authority. For this reason, the District Court (had it elected to consider this issue) would have had no choice but to deny the relief requested in Appellant's Renewed Motion.

## IV. THE COURT DID NOT ERR IN DENYING APPELLANT'S RENEWED MOTION AND NOT ORDERING DISCOVERY OR AN EVIDENTIARY HEARING ON ARBITRABILITY.

In Appellant's Renewed Motion, Appellant requests an order compelling the parties to arbitration *and* the District Court litigation be dismissed or, in the alternative, abated pending conclusion of arbitration. At no place in Appellant's Renewed Motion or its Reply submission did Appellant discuss the necessity of

---

arbitration); *Inland Bulk Transfer Co. v. Cummins Engine Co.,* 332 F.3d 1007, 1018 (6th Cir. 2003) ("[T]he Federal Arbitration Act prevents federal courts from compelling arbitration outside their own district."); *Mgmt. Recruiters Int'l, Inc. v. Bloor,* 129 F.3d 851, 854 (6th Cir. 1997) (reiterating the FAA requires that only a district court in the forum specified in the agreement may compel arbitration); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer,* 49 F.3d 323, 327 (7th Cir. 1995) ("[T]he directive of § 4 is mandatory. It clearly requires a geographic link between the site of the arbitration and the district which, *by compelling arbitration or directing its scope*, exercises preliminary control." … ("[T]he inescapable logical import in the present situation, in which the location of arbitration is preordained, is that the statute limits the forum in which § 4 motions can be brought.").

further discovery on the arbitrability of Appellee's claims, expressly or impliedly request relief in the form of an order for further discovery on the arbitrability of Appellee's claims, *or* otherwise seek or request an evidentiary hearing on the issue of the arbitrability of Appellee's claim. The foregoing notwithstanding, Appellant now asserts the District Court erred in not *sua sponte* ordering discovery or an evidentiary hearing on arbitrability. Such relief was neither requested by Appellant nor is it necessary.

The necessity (or lack thereof) of discovery or an evidentiary hearing on arbitrability turns on the respective proof burdens of the parties relating to Appellant's renewed Motion. "Motions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment." *Gibbs v. Stinson*, 421 F. Supp. 3d 267, 299 (E.D. Va. 2019) *aff'd sub nom*. *Gibbs v. Sequoia Capital Operations, LLC*, 966 F.3d 286 (4th Cir. 2020) (citation and internal quotation marks omitted). "[T]he burden of proof [on a motion to compel arbitration] is akin to the burden on summary judgment." *Id.* at 299 (citation and internal quotation marks omitted). "Under this modified summary judgment approach, the [D]istrict [C]ourt views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor." *Id.* As the moving party, Appellant has the burden to show that the arbitration clause applies. *Id*. (citing *Hancock v. AT&T Co*., 701 F.3d 1248, 1261 (10th Cir. 2012)). If Appellant meets that burden,

Appellee may "rebut that showing with evidence establishing a genuine dispute as to whether the provisions apply." *Id*.

"The FAA provides for discovery and a full trial in connection with a motion to compel arbitration only if "'the making of the arbitration agreement … be in issue.'" *Gordon v. TBC Retail Group, Inc*., 2016 U.S. Dist. LEXIS 106205, at *11 (D.S.C. 2016) (citing *Simula, Inc. v. Autoliv, Inc.,* 175 F.3d 716, 726 (9th Cir. 1999) (quoting 9 U.S.C. § 4)); *Yancey v. Equifax Info. Servs., LLC*, 2019 U.S. Dist. LEXIS 154835, at *3 (E.D. Va. 2019).

In *Yancey*, the appellant claimed the signature appearing on the proffered arbitration agreement was not hers. Consequently, the court ordered a limited evidentiary hearing on the issue of whether the plaintiff had signed the arbitration agreement. *Yancey*, 2019 U.S. Dist. LEXIS 154835, at *1. Here, by contrast, discovery and/or an evidentiary trial will not yield addition information helpful to the court in adjudicating Appellant's Renewed Motion. This is true for the reason that further discovery and/or an evidentiary hearing will not alter, amend, or clarify the District Court's factual basis for denying Appellant's Renewed Motion, as follows:

(i)    Discovery and an evidentiary hearing will not change the fact that Appellant's proposed agreement is made by and between Cap Cab and S. James;

(ii) Discovery and an evidentiary hearing will not change the fact that Appellant's proposed agreement makes no reference to the Appellant, "RPS Holdings, LLC," as a party to the agreement;

(iii) Discovery and an evidentiary hearing will not change the fact that Appellant's proposed agreement fails to include language that gives an objective reader a reasonable inference, belief, or understanding that Cap Cab is, in fact, RPS Holdings, LLC;

(iv) Discovery and an evidentiary hearing will not assist Appellant in identifying the signatory on Appellant's proposed agreement for Cap Cab, as this information was solely within Appellant's custody, possession, and control at the time Appellant filed its Renewed Motion, and Appellant does not need or require further discovery or an evidentiary hearing to learn of the signatories identity and/or his or her theoretical relationship to Appellant;

(v) Discovery and an evidentiary hearing will not change the fact the unknown and unidentified signatory on Appellant's proposed agreement on behalf of Cap Cab does not include an indication as to the identity of the signing party or identify that individual's  role, title, or the potential express or implied agency capacity of the signing party to or for "Cap Cab;"

(vi) The unknown signatory on Appellant's proposed agreement on behalf of Cap Cab does not indicate express or implied agency on behalf of Appellant, RPS Holdings, LLC;

(vii) Appellant is in possession, custody, and control of its corporate documents and related filings and, as such, discovery and an evidentiary hearing will not change the fact that Appellant can identify no document supporting or affirming that Appellant has *ever* done business in the State of North Carolina as "Cap Cab;"

(viii) Discovery and an evidentiary hearing will not change the fact that Appellant *did not* file a Certificate of Assumed Name for use of "Cap Cab" with the Wake County, North Carolina, Register of Deeds;

(ix) Discovery and an evidentiary hearing change the fact that it is impossible for Appellant to compel Appellee to arbitrate Appellee's claim against Appellant at a location that is both in Charlotte, North Carolina *and* within twenty-five miles of Morrisville, North Carolina; and

(x) Discovery and an evidentiary hearing will not change the fact that the United States District Court for the Middle District of North Carolina does not have authority to compel arbitration of Appellee's claim against Appellant in a venue solely within the jurisdiction of the United States District Court for the Western District of North Carolina.

Discovery and an evidentiary hearing will not alter the plain language of Appellant's proposed agreement, which fails, *in toto*, to identify Appellant, much less ***a mutual agreement*** between Appellant and Appellee to arbitrate Appellee's claim against Appellant. Thus, the parties here do not have a dispute "over the very existence of the agreement to arbitrate," nor is the "making of the arbitration agreement" at issue. Thus, under the FAA, Appellant holds no entitlement to discovery or an evidentiary hearing on arbitrability.

Further, Appellant fails to identify any specific evidence it believes will come to light had the District Court ordered discovery or an evidentiary hearing. Instead, the District Court correctly observed that Appellant already held any relevant and necessary evidence in its possession, custody, and control in its Renewed Motion. Accordingly, the District Court ruled correctly in declining to enter a *sue sponte* order for discovery and an evidentiary hearing on arbitrability and correctly denied Appellant's Renewed Motion, based on Appellant's proffer and the evidentiary record before the Court. *See Bauer-Robertson v. Shiva Fin., LLC*, 2021 U.S. Dist. LEXIS 68896, at \*29-31 (E.D. Va. 2021).

## CONCLUSION

At end, the District Court correctly denied Appellant's Renewed Motion. Indeed, Appellant's proposed agreement simply does not represent a mutual agreement between Appellant and Appellee to arbitrate claims between Appellant and Appellee. Further, because the mandatory venue and forum restrictions are impossible to comply with and impossible for the District Court to enforce, Appellant's proposed agreement is unenforceable. For these two (2) reasons, the District Court did not err in its denial of Appellant's Renewed Motion and no further discovery was or is necessary on these legal and factual issues. For this reason, this Court should properly affirm the District Court's denial of Appellant's Renewed Motion.

## RULE 34 STATEMENT

Appellee does not object to the Court scheduling an oral argument on this appeal.

Dated: May 31, 2022.

*/s/ Gilda Adriana Hernandez*
Gilda A. Hernandez (NCSB No. 36812)
Charlotte C. Smith (NCSB No. 53616)
THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC
1020 Southhill Drive, Suite 130
Cary, North Carolina 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
Email: ghernandez@gildahernandezlaw.com
Email: csmith@gildahernandezlaw.com
*Attorneys for Appellee*

# CERTIFICATE OF COMPLIANCE

I hereby certify that his document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B). This document contains 7,002 words and has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

_/s/_ _Gilda Adriana Hernandez_____
Gilda Adriana Hernandez

## **CERTIFICATE OF SERVICE**

This is to certify that on May 31, 2022 a true and correct copy of the foregoing **Appellee's Response in Opposition to Appellant's Opening Brief** was delivered via the CM/ECF system to all counsel of record.

_____/s/___ _Gilda Adriana Hernandez_____
Gilda Adriana Hernandez