**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

_____

SIOBHAN JAMES, on behalf of herself and all others similarly situated
Plaintiff – Appellee

v.

RPS HOLDINGS, LLC, d/b/a Capital Cabaret
Defendant – Appellant

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

## APPELLANT'S REPLY BRIEF

Luke Lirot, Esq,
Florida Bar No. 714836
LUKE CHARLES LIROT, P.A.
2240 Belleair Rd., Suite 190
Clearwater, FL 33764
727-536-2100
727-536-2110 (fax)
Luke2@LirotLaw.com

MICHAEL STRICKLAND, ESQ.
NC BAR # 17101
MICHAEL W. STRICKLAND AND ASSOC.
PO BOX 30787
RALEIGH, NC 27622
919-571-3898
919-571-1038 (FAX)
MStrickland@StricklandLaw.com

_Counsel for Appellant_

# TABLE OF CONTENTS

TABLE OF CONTENTS..............................................................................ii

TABLE OF AUTHORITIES ...................................................................... iii

I.  CAP CAB'S REPLY TO MS.  JAMES' PROCEDURAL HISTORY
    SUMMARY OF THE ARGUMENT............................................................1

II. REPLY TO MS. JAMES' SUMMARY OF THE ARGUMENT ……………4

III. REPLY ARGUMENT ……………….....……………………………….... 5

A. MS. JAMES CONCEDES THE MERITS OF THE CAP CAB'S ARGUMENTS
SUPPORTING THE EXISTENCE OF A VALIDLY FORMED AND
ENFORCEABLE ARBITRATION AGREEMENT AND EVEN THE ABSENCE
OF A "CAP CAB" SIGNATURE WOULD NOT INVALIDATE THE
AGREEMENT……………………………………………………………..... 5

B. THE CAP CAB'S AGREEMENT IS FULLY ENFORCEABLE THROUGH
THEORIES OF AGENCY AND "IMPLIED IN FACT" CONTRACT LAW …. 12

C. MS.  JAMES IGNORES THE PLAIN LANGUAGE OF THE ARBITRATION
AGREEMENT TO MISREPRESENT OPTIONAL VENUE LANGUAGE AS
"MANDATORY" IN ATTEMPT TO CREATE AN "IMPOSSIBILITY" NEITHER
SUPPORTED BY THE AGRREMENT NOR THE UNDERLYING PREFERNCE
TO HAVE PARTIES ARBITRATE WHERE THEY HAVE AGREED TO DO
SO……………………………………………………………………..… 17

D. BASED ON THE NATURE OF THE DISTRICT COURT'S ORDER
DISCOVERY AND/OR AN EVIDENTIARY HEARING ON ARBITRABILITY
WAS NECESSARY ………………………………………...……….... 22

CONCLUSION...................................................................................23

CERTIFICATE OF COMPLIANCE…………………………………......…25

CERTIFICATE OF SERVICE…………………………………………...… 25

# **TABLE OF AUTHORITIES**

Cases

*American Broadcasting Companies, Inc. v. American Fed'n of Television and Radio Artists*,
412 F.Supp. 1077, 1084 (D.C.N.Y.1976) ……………………………….….……18

*Annot.*
84 A.L.R.2d 12 (1962) ................................................................................21

*Archer v. Rockingham Cty.,*
548 S.E.2d 788, 793 (N.C. Ct. App. 2001) ………………………………….... 14

*Berkeley Cnty. Sch. Dist. v. Hub Int'l, Ltd*,
944 F.3d 225, 238 (4th Cir. 2019) .........................................................13

*Blount-Midyette & Co. v. Aeroglide Corp*.,
254 N.C. 484, 119 S.E.2d 225 (1961).....................................................21

*Burley v. U.S. Foods, Inc., ___ N.C.App. ___,*
756 S.E.2d 84, 89 (N.C.Ct.App.2014) …………………………………….....8

*Carson v. Giant Food, Inc,*
175 F.3d 325, 329 (4th Cir. 1999) .............................................................5

*Cheech v. Melnik,*
347 N.C. 520, 526-27 (1998) ..................................................................14

*Collie v. Wehr Dissolution Corp.*,
345 F.Supp.2d 555, 558-59 (M.D.N.C.2004).........................................8, 9

*Companhia De Navegacao Lloyd Brasileiro v. C.G. Blake Co.,*
34 F.2d 616, 619 (2d Cir.1929)...............................................................20

*CompuCredit Corp. v. Greenwood, ___ U.S. ___, 132 S.Ct.,*
665, 669, 181 L.Ed.2d 586 (2012)...........................................................5

*Daisy Mfg. Co. v. NCR Corp.,*
29 F.3d 389, 392 (8th Cir.1994) ...............................................................9

*Davis v. BSH Home Appliances Corp.,*
4:15-CV-103-FL, 2016 WL 2901741, at *4 (E.D.N.C. May 18, 2016).................15

*Dermott v. Jones (2 Wall.),*
69 U.S. 1, 8, 17 L.Ed. 762 (1864) .........................................................19

*Dillon v. BMO Harris Bank, N.A.,*
173 F. Supp. 3d 258, 263 (M.D.N.C. 2016) ............................................10

*Exec. Leasing Assocs. v. Rowland,*
227 S.E.2d 642, 644 (N.C. Ct. App. 1976) …………………………………..10, 11

*First Options of Chicago, Inc. v. Kaplan,*
514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)................................19

*Fitzpatrick v. Immune Techs., L.L.C,*
No. 05-80594-CIV, 2007 WL 9707027, at *3 (S.D. Fla. Feb. 12, 2007)......... 10, 11

*Foote & Davies, Inc. v. Arnold Craven, Inc.,*
72 N.C. App. 591, 595 (1985) ................................................................12

*Gordon v. TBC Retail Group, Inc.,*
2016 U.S. Dist. LEXIS 106205, at *11 (D.S.C. 2016)...........................................22

*Hemric v. Groce,*
169 N.C. App. 69, 76 (2005) ................................................................18

*Hightower v. GMRI, Inc.,*
272 F.3d 239, 242-43 (4th Cir. 2001) ……………………………………………………15

*Hill v. Peoplesoft USA, Inc.,*
412 F.3d 540, 543 (4th Cir. 2005) ...........................................................6

*Holcomb v. Colonial Assocs., L.L.C.,*
358 N.C. 501, 597 S.E.2d 710, 716 (2004)...........................................................13

*Howard v. Ferrellgas Partners, L.P.*,
748 F.3d 975, 977 (10th Cir. 2014) ........................................................6

*Howard v. Oakwood Homes Corp.*,
516 S.E.2d 879 (N.C. Ct. App. 1999)..................................................9, 15

*Howell v. Smith*,
128 S.E.2d 144, 153 (N.C. 1962) …………………………...………………15

*International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*,
206 F.3d 411, 416-17 (4th Cir. 2000) ....................................................12

*In the Matter of Keystone Shipping and Texport Oil Co.*,
782 F.Supp. 28, 30 (S.D.N.Y.1992) .........................................................9

*King v. Oakwood Home, Inc.*,
No. Civ. 1:99cv0059, 2000 WL 1229753 at *4-5 (M.D.N.C. Aug. 3, 2000)..........15

*Krusch v. TAMKO Bldg. Prods., Inc.*,
34 F. Supp. 3d 584, 589 (M.D.N.C. 2014) …………………………………...7, 8

*Levin v. Alms & Assocs., Inc.*,
634 F.3d 260, 266 (4th Cir.2011) …………………………………………...18

*Lorenzo v. Prime Commc'ns, L.P.*,
806 F.3d 777, 782 (4th Cir. 2015) ..........................................................15

*Martin v. Martin*,
26 N.C. App. 506,508,216 S.E.2d 456, 457-58 (1975) ...........................18

*Martin*,
133 N.CApp. at 121, 514 S.E.2d at 309 …………………………………… 10

*May v. Higbee Co.*,
372 F.3d 757, 764 (5th Cir. 2004) ………………………………………… 15

*Mishara Const. Co., Inc. v. Transit-Mixed Concrete Corp.*,
supra, 310 N.E.2d at 367 …………………………………………………... 20

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ………………………… 5, 18

*Norburn v. Mackie*,
262 N.C. 16, 136 S.E.2d 279, 285 (1964) ……………………………………… 13

*Opera Co. of Boston v. Wolf Trap Foundation*,
817 F. 2d 1094 (4th Cir 1987) …………………………………………………... 19

*Padro v. Citibank*,
14-CV-2986 NGG LB, 2015 WL 1802132, at *5 (E.D.N.Y. Apr. 20, 2015) …... 15

*Perry v. Champlain Oil Co.*,
101 N.H. 97, 134 A.2d 65 (1957) …………………………………………… 21

*Raymond James Fin. Servs. v. Cary*,
709 F.3d 382, 386 (4th Cir. 2013) …………………………………………... 5

*Real Color Displays, Inc. v. Universal Applied Tech. Corp.*,
950 F.Supp. 714, 717-18 (E.D.N.C.1997) …………………………………… 8, 9, 10

*Rowland v. Sandy Morris Fin. & Estate Planning Servs., LLC*,
993 F.3d 253,257 (4th Cir. 2021) …………………………………………… 6

*Sechrest v. Forest Furniture Co.*,
264 N.C. 216, 141 S.E.2d 292 (1965) …………………………..…………… 21

*Schwarz v. St. Jude Med., Inc.*,
802 S.E.2d 783, 790 (N.C. Ct. App. 2017) …………………………….….. 16

*Short v. Circus Trix Holdings, LLC*,
274 N.C. App. 311, 318 (2020) ……………………………………….… 12

*Snyder v. Freeman*,
300 N.C. 204, 266 S.E.2d 593, 602 (1980) …………………………………... 8, 14

*Simula, Inc. v. Autoliv, Inc.*,
175 F.3d 716, 726 (9th Cir. 1999) …………………………………………… 22

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp*.,
___ U.S. ___, 130 S.Ct. 1758, 1773, 176 L.Ed.2d 605 (2010) ………………….. 18

*Thomas v. Pub. Storage, Inc*.,
957 F. Supp. 2d 496, 499 n.2 (S.D.N.Y. 2013) ………………………………… 15

*UBS Fin. Svcs. v. Carilion Clinic*,
706 F.3d 319, 323-25 n. 2 (4th Cir.2013) …………………………………… 5

*Ward v. Ward*,
797 S.E.2d 525, 529 (N.C. Ct. App. 2017) …………………………………… 14

*W. Techs., Inc. v. Omnivations II, L.L.C*.,
583 S.W.3d 786, 793 (Tex. App. 2019) …………………………………… 11

*Yancey v. Equifax Info. Servs., LLC*,
2019 U.S. Dist. LEXIS 154835, at *3 (E.D. Va. 2019) ………………………… 22

Statutes

9 U.S.C. § 2 ………………..……………………………………...……7, 8

9 U.S.C. § 4 ...................................................................................22

29 U.S.C. § 201 ………………………………………………………1

N.C. Gen. Stat. § 95-25.6 ...................................................................1

Other Authorities

Local Rule 28(d) ……………………………………………………….. 1

17 C.J.S. Contracts § 32 .................................................................15

17A C.J.S. Contracts § 463(2) (1963) ……………………………………... 21

§ 265 of Restatement (Second) of Contracts ..........................................16

Restatement (Second) of Contracts § 23...................................................................18

SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF
CONTRACTS §4:1 (4th ed. 2007)...........................................................................16

# I.    CAP CAB'S REPLY TO MS. JAMES' PROCEDURAL HISTORY

Utilizing references to the parties as called for in Local Rule 28(d), Appellant, RPS Holdings, LLC, will be referred to as "Cap Cab," and the Appellee, Siobhan James, will be referred to as "Ms. James." The nature of the case below is accurately described, and it is true that, on February 11, 2020, Ms. James, on behalf of herself and other similarly situated individuals, filed a Class and Collective Action Complaint against the Cap Cab. The nature of the dispute focuses on an issue that is at the center of scores of cases involving Gentlemen's Clubs, such as the Cap Cab, and performers, such as Ms. James, who complain that the "business model" historically used by Gentlemen's Clubs throughout the country for decades which treats performers as independent entities that can use the entirety of the Club's facilities to provide entertainment to the Club's customers and retain the vast majority of the "dance fees" that would otherwise be the property of the Club. This action does involve the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat.§ 95-25.6, *et seq.*, and it is clear that Ms. James seeks additional compensation in addition to the generous "dance fees" she retained under the above described business model.

Ms. James accurately describes the procedural history of this action, and accurately identifies the essence of the district court's denial of enforcing the subject Arbitration Agreement (the "Agreement") based on the fact that the Agreement

referenced the signatories thereto as "S. James" and "Cap Cab," with no reference to the operating entity, RPS Holdings, LLC, or any reference to RPS Holdings, LLC, as the owner of the fictitious name, the "Capital Cabaret." The district court found that because the reference to "Cap Cab" was, essentially, not a formal agreement with the club entity, the district court denied the Arbitration Motion. (JA 123-158).

Ms. James describes the documents relied on by Cap Cab, to wit: a copy of Ms. James' United States Passport (JA 72), the Arbitration Agreement signed and relied on by Cap Cab, (JA 73-75), and Ms. James' "signature page," acknowledging receipt of her "Entertainer Orientation Packet (JA 70). Ms. James also accurately reiterates the same aspects of the documents signed and relied on by the Cap Cab:

(i)    The proposed agreement is made by and between Cap Cab and S. James;

(ii)   The proposed agreement makes no reference to "RPS Holdings, LLC," specifically, identifying only "Cap Cab" as the "company" thereinafter referred to throughout the remainder of the agreement.

       Additionally, Ms. James then asserts these additional "arguments," which are:

(iii)  The proposed agreement fails to include language that gives an objective reader a reasonable inference, belief, or understanding that Cap Cab is, in fact, RPS Holdings, LLC;

(iv)   The unknown signatory of the proposed agreement on behalf of Cap Cab does not include an indication as to the identity of the signing party;

(v)    The unknown signatory of the proposed agreement on behalf of Cap Cab does not identify that individual's role, title, or the potential express or implied agency capacity of the signing party to or for "Cap Cab"; and

(vi)     The unknown signatory of the proposed agreement on behalf of Cap Cab does not indicate express or implied agency on behalf of Appellant RPS Holdings, LLC.

Further, Ms. James then asserts the "venue and forum selection" clauses contained within the Arbitration Agreement are fatal to the agreement:

(i)      Section 2 of Appellant's proposed agreement dictates that the parties shall be submitted exclusively to and determined exclusively by binding arbitration in Charlotte, North Carolina; and

(ii)     Section 12 of Appellant's proposed agreement dictates that any arbitration hearing arising under the proposed agreement shall be held at a location in Charlotte, North Carolina within twenty-five miles of the last place Entertainer provided services to Company.

As will be shown below, the approach taken by both the District Court and Ms. James is overly technical as it pertains to the doctrine underlying the preferability of referring matters to arbitration, when, as in this action, it is entirely appropriate. Additionally, any confusion, or even the ***absence*** of a signature from the "company" to be bound by the agreement does not preclude arbitration, and, most importantly, when the document was signed by Ms. James ***containing*** the "venue and forum selection" clauses, so she has no standing to assert "impossibility" as a defense to participating in arbitration. In sum, this Court should reverse the District Court and order that this case proceed to arbitration.

## II. REPLY TO MS. JAMES' SUMMARY OF THE ARGUMENT

Cutting to the chase and replying directly to Ms. James' arguments, Cap Cab has consistently asserted the existence of a valid and enforceable contract establishing a mutual agreement to arbitrate between Cap Cab and Ms. James, because: (1) basic contract law supports the assertion the agreement in question is a valid and enforceable arbitration agreement, (2) a representative of Cap Cab had, at the very least, "apparent agency" binding the Cap Cab to the agreement it presented to the district court in the Club's effort to ***compel*** arbitration, (3) all contractual factors establish that all parties acted, continuously, in reliance on the fact that they mutually agreed to arbitrate any of Ms. James' claims with Cap Cab, and (4) the underlying contractual obligation of good faith and fair dealing, coupled with the language that calls for a venue that has no limitations, since the geographic impossibility word processed into this form document allowed for valid performance and venue to which "the parties" themselves could "agree otherwise." Based on the arguments and the underlying rationale that arbitration is favored if there is any indication that "alternative dispute resolution" has been contemplated and agreed to by the parties, as further described below, this Court should reverse the District Court's Order.

4

## III.  REPLY ARGUMENT

### A. MS. JAMES CONCEDES THE MERITS OF THE CAP CAB'S ARGUMENTS SUPPORTING THE EXISTENCE OF A VALIDLY FORMED AND ENFORCEABLE ARBITRATION AGREEMENT AND EVEN THE ABSENCE OF A "CAP CAB" SIGNATURE WOULD NOT INVALIDATE THE AGREEMENT.

The first citation mention by Ms. James' properly recognizes, "Generally, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," citing *Carson v. Giant Food, Inc.,* 175 F.3d 325, 329 (4th Cir. 1999). The remainder of the authorities cited by Ms. James are not germane to the specific facts of this case. *Raymond James Fin. Servs. v. Cary,* 709 F.3d 382, 386 (4th Cir. 2013), was a situation where arbitration was sought with a ***third party*** based solely on a relationship the third party may have had with one party to an arbitration agreement. This is not the "S. James" and "Cap Cab" scenario:

> To repeat, the investors here never purchased any service or commodity from RJFS during the course of its business activities…But while it is beyond question that the Supreme Court has recognized such advantages and adopted "a liberal federal policy favoring arbitration agreements," *CompuCredit Corp. v. Greenwood,* ___ U.S. ___, 132 S.Ct. 665, 669, 181 L.Ed.2d 586 (2012) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)) (internal quotation marks omitted), appellants overlook the fact that a court cannot apply any presumption in favor of arbitration unless there already exists an enforceable arbitration agreement between the parties. *See UBS Fin. Svcs. v. Carilion Clinic,* 706 F.3d 319, 323-25 n. 2 (4th Cir.2013).

*Id.* 709 F.3d at 387.

Additionally, no argument asserted by Cap Cab was asking the District Court to "grant blindly all motions to compel arbitration," as argued by Ms. James in citing *Rowland v. Sandy Morris Fin. & Estate Planning Servs., LLC,* 993 F.3d 253,257 (4th Cir. 2021), where, again, the dispute was not over the "S. James" and "Cap Cab" scenario, but a situation two completely ***different*** contracts:

> To wit, Mr. Rowland signed the AMA, which he submitted into evidence. Morris and SMF did not dispute that the Rowland AMA was in fact the version that Mr. Rowland signed. Morris and SMF also submitted into evidence the AMA that their agent signed. Mr. Rowland never received a copy of the SMF AMA and did not dispute that the version SMF submitted was the version that they signed. Those two AMAs differed as to a number of terms. In particular, an unknown employee at SMF added an extra account to be managed and filled in Mr. Rowland's investment objectives and risk preferences, which according to the contract, were to govern how SMF managed his money. There was no evidence in the record that Mr. Rowland ordered them to do so or was even informed that they made such changes. There was no evidence that he reviewed or initialed those changes. These discrepancies are not minor—they are material differences in the agreement between the parties.

*Id.* 993 F.3d at 259.

Thereafter, Ms. James concedes that, "The validity or enforceability of arbitration agreements is a matter of contract law," citing *Hill v. Peoplesoft USA, Inc.,* 412 F.3d 540, 543 (4th Cir. 2005). The other cases used to suggest the "flaws" or shortcomings in the instant scenario involve cases where, again, it is not the issue with "S. James" or the "Cap Cab," but cases cited where there was simply no agreement, ambiguous or otherwise, such as in *Howard v. Ferrellgas Partners, L.P.,*

748 F.3d 975, 977 (10th Cir. 2014), which involved an extensive dispute over the parties' attempt to add an arbitration clause to the terms of their preexisting account agreements. If anything, the *Howard* case supports the need for the "evidentiary" and additional "discovery" arguments that Cap Cab made in challenging the District Court's denial of the effort to compel arbitration.

The gist of Ms. James' further arguments urges this Court to apply North Carolina Law, which Cap Cab agrees with. There is no need to restate the many North Carolina contract cases cited, because there is no dispute with their holdings. The dispute is simply whether the presentation of a document purportedly signed by "S. James" and supported by what was presented to the "company" to establish her identity, Ms. James United States Passport (JA 72), the Arbitration Agreement signed and relied on by Cap Cab, (JA 73-75), and Ms. James' "signature page," acknowledging receipt of her "Entertainer Orientation Packet" (JA 70) lends enforceability to the agreement. As shown below, it absolutely does.

Whether the "written agreement" manifests the requisite "meeting of the minds" is not destroyed by there being "no reference to the Appellant, 'RPS Holdings, LLC,' as a party to its proposed agreement," but instead referring to the "Cap Cab." Indeed, North Carolina law supports the Cap Cab's position in this matter. Ms. James' argument is misplaced, because, regardless of whether the signature of someone identifiable with the Cap Cab, the complete absence of a

signature from the "company" does not affect the enforceability of the Agreement.
*See, e.g.*, *Krusch v. TAMKO Bldg. Prods., Inc.*, 34 F. Supp. 3d 584, 589 (M.D.N.C. 2014) ("Arbitration agreements must be in writing, 9 U.S.C. § 2, but they need not be signed to be enforceable.") The *Krusch* case fully supports Cap Cab's position in this matter:

> For a valid contract to exist under North Carolina law, the three elements of offer, acceptance, and consideration must be present. *Burley v. U.S. Foods, Inc.,* ___ N.C.App. ___, 756 S.E.2d 84, 89 (N.C.Ct.App.2014); *see also Snyder v. Freeman,* 300 N.C. 204, 266 S.E.2d 593, 602 (1980) ("[M]utual assent and the effectuation of the parties' intent is normally accomplished through the mechanism of offer and acceptance.").
>
> Here, TAMKO contends that Krusch agreed to the arbitration provision in the limited warranty, even though it is undisputed that neither Krusch nor anyone on his behalf ever signed it. (Doc. 15 at 11.) TAMKO asserts that agreements to arbitrate "need not be signed" to be accepted. (*Id.* citing *Collie v. Wehr Dissolution Corp.,* 345 F.Supp.2d 555, 558-59 (M.D.N.C.2004)); *Real Color Displays, Inc. v. Universal Applied Tech. Corp.,* 950 F.Supp. 714, 717-18 (E.D.N.C.1997).)
> …
> Arbitration agreements must be in writing, 9 U.S.C. § 2, but they need not be signed to be enforceable. *See Real Color,* 950 F.Supp. at 717 (noting no requirement that a written arbitration agreement be signed by the party to be charged); *Collie,* 345 F.Supp.2d at 558-59 (concluding that lack of employer's signature did not defeat finding of mutual assent where employee signed agreement containing arbitration provision).

*Id.*, 34 F. Supp. 3d 584 at 588 – 589.

*Real Color Displays, Inc. v. Universal Applied Techs. Corp.*, 950 F. Supp. 714, 717 (E.D.N.C. 1997), cited in the *Kusch* decision, also supports

the fact that "[T]here is no requirement that the written arbitration agreement necessarily be signed by the party to be charged." The case holds:

> However, as in contract law, there is no requirement that the written arbitration agreement necessarily be signed by the party to be charged. Indeed, neither the applicable statutory provisions nor cases involving this issue have imposed such a requirement. *See Daisy Mfg. Co. v. NCR Corp.,* 29 F.3d 389, 392 (8th Cir.1994) (citing that "[o]rdinary contract principles determine who is bound by such written provisions and of course parties can become contractually bound absent their signatures....") (citation omitted); *In the Matter of Keystone Shipping and Texport Oil Co.,* 782 F.Supp. 28, 30 (S.D.N.Y.1992) (stating that "although a party is bound by an arbitral award only where it has agreed to arbitrate, an agreement may be implied from the party's conduct.") (citations omitted); *American Broadcasting Companies, Inc. v. American Fed'n of Television and Radio Artists,* 412 F.Supp. 1077, 1084 (D.C.N.Y.1976) (holding that an arbitration agreement need not be signed; it is sufficient that parties by act or conduct commit themselves to it).

*Id.,* at 717-718

In *Collie v. Wehr Dissolution Corp.,* 345 F.Supp.2d 555, (M.D.N.C.2004), the Court made the following observations, exactly as it pertained to employers (like the Cap Cab or RPS Holdings, LLC):

> The lack of a signature by any representative of National Hearing Centers, Inc., does not undermine the Agreement's enforceability in the present action. *See Howard v. Oakwood Homes Corp.,* 134 N.CApp. 116, 120, 516 S.E.2d 879, 882 (1999) ("[B]y proffering the [contract regarding the Dispute Resolution Program], defendant has at least implicitly agreed to be mutually bound by the [agreement] .... Moreover, 559*559 the [agreement] provides that all arbitrations are to be conducted pursuant to the FAA. The FAA requires that agreements to arbitrate be in writing, however, *such agreements need not be signed."); see also Real Color Displays, Inc. v. Universal Applied*

*Techs. Corp.,* 950 F.Supp. 714, 717-18 (E.D.N.C.1997) (finding that the FAA imposes no requirement that a written arbitration agreement be signed by the party to be charged). Plaintiff accepted the offer both by signing the Agreement and by continuing as an at-will employee of National Hearing Centers, Inc. *See generally Martin,* 133 N.CApp. at 121, 514 S.E.2d at 309 (plaintiffs signature was "a `clear and unambiguous' certification of her willingness to submit disputes arising from her employment with Duke to the grievance procedure."); *Real Color Displays,* 950 F.Supp. at 717-18 (finding that a party may evidence an intent to be bound by the party's actions or conduct). Finally, there is no requirement of a course of performance to evidence mutual assent. Accordingly, Plaintiffs theory that there was a lack of mutual assent fails.

*Id.*, 345 F. Supp. 2d at 558-559.

Finally, as stated in *Dillon v. BMO Harris Bank, N.A.,* 173 F. Supp. 3d 258, 263 (M.D.N.C. 2016), "The agreement need not be signed if the parties otherwise commit themselves by act or conduct." Ms. James asserts that the Agreement requires some specific reference to RPS Holdings, LLC, as the Cap Cab, but the prevailing consideration is that Ms. James' continued performance at the Cap Cab is the sign of "mutual assent" sufficient to enforce the arbitration agreement.

"When a party to a bilateral contract makes an offer that does not unequivocally limit the mode of acceptance, the courts will construe the offer as inviting acceptance through either a promise or performance." *Fitzpatrick v. Immune Techs., L.L.C,* No. 05-80594-CIV, 2007 WL 9707027, at *3 (S.D. Fla. Feb. 12, 2007) (citing *Exec. Leasing Assocs. v. Rowland,* 227 S.E.2d 642, 644 (N.C. Ct. App. 1976)). In *Fitzpatrick,* the arbitration agreement at issue contained "an area

designated 'Accepted,'" where the designation was to "memorialize its acceptance of the same with an agent's signature." *Id.* The *Fitzpatrick* court noted that "[w]hile said area evidences that the parties *contemplated* acceptance through an Immune agent's signature, ***it does not unequivocally limit Immune's method of assent to a signature***." *Id.* (emphasis added); *see also Exec. Leasing Assocs. V. Rowland*, 227 S.E.2d 642, 644 (N.C. Ct. App. 1976) ("A written signature is not the exclusive means of signifying acceptance."); *W. Techs., Inc. v. Omnivations II, L.L.C.,* 583 S.W.3d 786, 793 (Tex. App. 2019) (the plaintiff argued the contract at issue was not accepted because the contract was conditioned on a signature; the court stated "the absence of a signature does not mean a contract was not formed . . . Contracts can be accepted in other ways as well").

Just like the court in *Fitzpatrick* found the party to be bound by the agreement "received the benefit she contracted for," so too should this Court conclude Ms. James received the benefit for which she contracted, namely, continued ability to utilize the Cap Cab's entire facility for her unfettered remuneration for performing at the Cap Cab. Here, there was a span of several years receipt of the Agreement where Ms. James continued to perform at the Cap Cab, notably with ***no*** complaint as she retained her "dance fees" that she had not been categorized (or paid minimum wage) as an employee. Her continued "employment" *and* participation in Cap Cab activities under other material provisions of the Agreement unambiguously

manifests her implied consent to the agreement, and, based on the points and authorities stated above, the arbitration agreement should be enforced regardless of the "issues" argued by Ms. James based on "signature" issues.

## B. THE CAP CAB'S AGREEMENT IS FULLY ENFORCEABLE THROUGH THEORIES OF AGENCY AND "IMPLIED IN FACT" CONTRACT LAW.

Ms. James argues that there is some flaw with the "Agency" argument made by Cap Cab, citing *International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH,* 206 F.3d 411, 416-17 (4th Cir. 2000). Ms. James asserts that there can be no "agency" established because the "signatory" for the Cap Cab cannot be identified. Putting aside for a moment the fact that, as shown in the section above, the "company" does not even have to sign an arbitration agreement to make it fully enforceable," An agent may contractually bind a principal to a third party if the third party can establish an agency relationship between the principal and agent." *Short v. Circus Trix Holdings, LLC,* 274 N.C. App. 311, 318 (2020). "A principal is liable upon a contract duly made by its agent with a third person in three instances: [(i)]when the agent acts within the scope of his or her actual authority; [(ii)] when a contract, although unauthorized, has been ratified; or [(iii)] when the agent acts within the scope of his or her apparent authority, unless the third person has notice that the agent is exceeding actual authority." *Foote & Davies, Inc. v. Arnold Craven, Inc.,* 72 N.C. App. 591, 595 (1985). As a general rule, "if [an] agent ... lacks authority

to bind his principal ... to a contract with a third party . . . yet purports to do so anyway, no contract is formed between the principal and the third party." *Berkeley Cnty. Sch. Dist. v. Hub Int'l, Ltd.*, 944 F.3d 225, 238 (4th Cir. 2019) (interpreting contract governed by South Carolina law) (emphasis supplied).

Ms. James' argument falters, first, based on the extensive authority cited in the section above that holds that that lack of an employer's signature did not defeat finding of mutual assent where an employee signed an agreement containing arbitration provision. An agent is one who acts with the authority, either express or implied, of a principal and over whom a principal exerts control. *Holcomb v. Colonial Assocs., L.L.C.,* 358 N.C. 501, 597 S.E.2d 710, 716 (2004) (citation omitted). In *Norburn v. Mackie,* 262 N.C. 16, 136 S.E.2d 279, 285 (1964), the Court held, "[A] principal is chargeable with, and bound by, the knowledge of or notice to his agent received while the agent is acting as such within the scope of his authority and in reference to a matter over which his authority extends, although the agent does not in fact inform his principal thereof."

Here, the "agent," whether an identifiable signatory or not, was acting as such within the scope of his authority and in reference to a matter over which his authority extends, since the "offer" was the presentation of the document now bearing "S. James" signature. This is easily established and is not disputed, the only dispute being with whom the Agreement was made, "Cap Cab" being viewed by the district

court as not being a formal enough reflection of RPS Holdings, LLC, d/b/a Capital Cabaret.  At the very least, the document reflects that there was some "management" related presentation of the Arbitration Agreement to "S. James" sufficient to have acquired her signature in the document.

Also, as thoroughly argued in Appellant's Brief, regardless of the "informality" of the reference to "Cap Cab" in the Agreement, this case is directly germane to the multiple authorities establishing an implied-in-fact contract, which North Carolina recognizes.  As recognized by Ms. James in her Brief, the decision in *Cheech v. Melnik*, 347 N.C. 520, 526-27 (1998) is helpful, but more so to Cap Cab:  Implied-in-fact contracts "arise[] where the intent of the parties is not expressed, but an agreement in fact, creating an obligation, is implied or presumed from their acts."  *Id.* (citing *Snyder,* 266 S.E.2d at 602).  "Except for the method of proving the fact of ***mutual assent***, there is no difference in the legal effect of express contracts and contracts implied in fact."  *Id.*  (emphasis added).  "With regard to contracts implied in fact . . . one looks . . . to the actions of the parties showing an implied offer and acceptance."  *Id.* at 912; *see also Ward v. Ward,* 797 S.E.2d 525, 529 (N.C. Ct. App. 2017) (quoting *Creech*); *Archer v. Rockingham Cty.*, 548 S.E.2d 788, 793 (N.C. Ct. App. 2001) (noting implied contracts are "inferred from the circumstances, conduct, acts or relations of the parties showing a tacit understanding").  Here, Cap Cab's "offer," presumably for the business in some

fashion or another, specifically made continued "employment" contingent upon acceptance of the offer. Ms. James continued her "employment" for years after receiving the offer. Continued "employment" after an offer to arbitrate has been held by this Court, other courts in this jurisdiction, North Carolina courts, and other courts throughout the nation to be sufficient to constitute acceptance of the offer, as discussed in detail *infra*. *See, e.g.*, *Lorenzo v. Prime Commc'ns, L.P.,* 806 F.3d 777, 782 (4th Cir. 2015); *Hightower v. GMRI, Inc.*, 272 F.3d 239, 242-43 (4th Cir. 2001); *May v. Higbee Co.,* 372 F.3d 757, 764 (5th Cir. 2004); *Davis v. BSH Home Appliances Corp.,* 4:15-CV-103-FL, 2016 WL 2901741, at *4 (E.D.N.C. May 18, 2016); *King v. Oakwood Home, Inc.*, No. Civ. 1:99cv0059, 2000 WL 1229753 at *4-5 (M.D.N.C. Aug. 3, 2000); *Howard v. Oakwood Homes Corp.,* 516 S.E.2d 879 (N.C. Ct. App. 1999), *review denied*, 539 S.E.2d 288 (1999); *Thomas v. Pub. Storage, Inc.,* 957 F. Supp. 2d 496, 499 n.2 (S.D.N.Y. 2013); *Padro v. Citibank, N.A.,* No. 14-CV-2986 NGG LB, 2015 WL 1802132, at *5 (E.D.N.Y. Apr. 20, 2015).

Mutual assent then is also shown. Mutual assent is determined objectively by the words or actions of the parties and not subjectively. *Howell v. Smith,* 128 S.E.2d 144, 153 (N.C. 1962) (noting "judged by a reasonable standard, manifest an intention to agree in regard to the matter in question, that agreement is established, and it is immaterial what may be the real but unexpressed state of mind on the subject, as

mental assent to the promises in a contract is not essential" (quoting 17 C.J.S. Contracts § 32); *Schwarz v. St. Jude Med., Inc.,* 802 S.E.2d 783, 790 (N.C. Ct. App. 2017) ("'secrete, subjective intent is immaterial, so that mutual assent is to be judged only by overt acts and words rather than by hidden, subjective or secret intention of the parties.") (quoting SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS §4:1 (4th ed. 2007).

Cap Cab offers no unsupported "fact -based conclusions," because the arguments speak for themselves, based on the DATES contained on the Agreement already found in the record! The document itself bears a date of August 4, 2015 ("8.4.15") (JA 75).

Regardless of the informality of the Agreement, Ms. James cannot escape the terms of the contract she agreed to, especially when the overwhelming evidence shows she received the offer, she accepted the offer by her continued employment. i.e. performing since August 4, 2015, and, thus, the parties achieved a "meeting of the minds." If every party resisting the terms of an implied-in-fact contract could escape enforcement of the terms of the contract by disclaiming awareness of the contract, there would be no implied-in-fact contract doctrine. Ms. James contracted to the Arbitration Agreement and should be bound by its terms.

## C. MS. JAMES IGNORES THE PLAIN LANGUAGE OF THE ARBITRATION AGREEMENT TO MISREPRESENT OPTIONAL VENUE LANGUAGE AS "MANDATORY" IN ATTEMPT TO CREATE AN "IMPOSSIBILITY" NEITHER SUPPORTED BY THE AGRREMENT NOR THE UNDERLYING PREFERNCE TO HAVE PARTIES ARBITRATE WHERE THEY HAVE AGREED TO DO SO

In reaching its ruling, the District Court did not rule directly on Appellee's alternative argument that Appellant's proposed Agreement is unenforceable because (i) it is impossible for Appellee and Appellant to arbitrate Appellee's claim against Appellant both (a) in Charlotte and (b) within Twenty-Five (25) miles of Morrisville, North Carolina and (ii) the United States District Court for the Middle District of North Carolina does not have authority to compel arbitration in Charlotte, North Carolina. Simply stated, the "plain language" of the Arbitration Agreement neutralizes both of these misplaced arguments. The "twenty-five mile" issue is quickly and easily disposed of. In her Response, Ms. James inaccurately quotes the Arbitration Agreement. The complete recitation in the Agreement, Section 12, states in its entirety:

> "The parties to this Agreement agree that the arbitration hearing shall be held at a location in Charlotte, North Carolina within twenty-five (25) miles of the last place entertainer provided services to Company, ***unless the parties agree otherwise.***" (Emphasis added)(JA 74).

Obviously, Ms. James' argument is countered by her own cited authority: "Where the language of a contract is plain and unambiguous, the construction of the agreement is a matter of law; and the court may not ignore or delete any of its provisions, nor insert words into it, but must construe the contract as written, in the light of the undisputed evidence as to the custom, usage, and meaning of its terms." *Hemric v. Groce,* 169 N.C. App. 69, 76 (2005) (quoting *Martin v. Martin,* 26 N.C. App. 506,508,216 S.E.2d 456, 457-58 (1975)), cert. denied, 359 N.C. 631 (2005)). There is nothing ambiguous about this "option."

Additionally, there is no need to suggest that the District Court exceed its jurisdictional limits in compelling arbitration. Restating the obvious, particularly since there is no "plain language" restricting the ***"the parties"*** from ***"agreeing otherwise"*** as it pertains to the initial consideration, the underlying rationale favoring arbitration is the first point in favor of the Cap Cab:

> The FAA stands as "a congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Its "primary purpose... is to ensure that private agreements to arbitrate are enforced according to their terms." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,* ___ U.S. ___, 130 S.Ct. 1758, 1773, 176 L.Ed.2d 605 (2010) (internal quotations omitted). In interpreting such agreements, we resolve "any doubts concerning the scope of arbitrable issues ... in favor of arbitration." *Moses H. Cone,* 460 U.S. at 24-25, 103 S.Ct. 927; *see also Levin v. Alms & Assocs., Inc.,* 634 F.3d 260, 266 (4th Cir.2011).
>
> …

In determining the parties' intent, we apply ordinary state law principles governing the formation of contracts. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).

The doctrine of impossibility of performance as an excuse or defense for a breach of contract was for long smothered under a declared commitment to the principle of sanctity of contracts. This rationale for constrained application of the doctrine was expressed by the United States Supreme Court in *Dermott v. Jones* (2 Wall.), 69 U.S. 1, 8, 17 L.Ed. 762 (1864):

> The principle which controlled the decision of the cases referred to rests upon a solid foundation of reason and justice. It regards the sanctity of contracts. It requires parties to do what they have agreed to do. If unexpected impediments lie in the way, and a loss must ensue, it leaves the loss where the contract places it. If the parties have made no provision for a dispensation, the rule of law gives none. It does not allow a contract fairly made to be annulled, and it does not permit to be interpolated what the parties themselves have not stipulated.

Obviously, as a signatory to the Agreement, Ms. James would have presumably been bound by its terms and charged with knowing and agreeing to the contents thereof, including the geographically impossible "venue" components, notwithstanding the agreement to allow the "parties" to "agree otherwise" and use the option available to make the Agreement enforceable, especially since Ms. James' continued benefit for continuing to perform in the Cap Cab predicated on their belief they had a valid agreement to arbitrate would only be equitable.

In *Opera Co. of Boston v. Wolf Trap Foundation,* 817 F. 2d 1094 (4th Cir 1987), this Court commented on these issues in a way beneficial to the Cap Cab:

> As the Court in *Mishara Const. Co., Inc. v. Transit-Mixed Concrete Corp., supra,* 310 N.E.2d at 367 remarked this question is much broader than mere foreseeability and is, "Was the contingency which developed one which the parties could reasonably be thought to have foreseen as a *real possibility* which could affect performance?" (footnote omitted) and this question is in turn what Judge Learned Hand in *Companhia De Navegacao Lloyd Brasileiro v. C.G. Blake Co.,* 34 F.2d 616, 619 (2d Cir.1929) said was "in the end a question of how unexpected at the time [the contract was made] was the event which prevented performance." After all, as Williston has said, practically any occurrence can be foreseen but whether the foreseeability is sufficient to render unacceptable [1102*1102] the defense of impossibility is "one of degree" of the foreseeability and whether the non-occurrence of the event was sufficiently unlikely or unreasonable to constitute a reason for refusing to apply the doctrine. And that is the rule which we think accords with modern reasoning of the doctrine as an equitable doctrine and is the one we approve.
>
> The second fact to be determined in the proposed application of the doctrine is that the frustration of performance was substantial. To satisfy this requirement "[t]he frustration must be so severe that it is not fairly to be regarded as within the risks [the obligor] assumed under the contract." Comment a, § 265 of Restatement (Second) of Contracts And, finally, the defendant asserting the defense must establish that performance was impossible as that term has been defined in the refinements of the doctrine.

Obviously, Ms. James, a signatory to the document, cannot take the unyielding position that the Agreement is unenforceable, since she knew or should have known that that aspect of the Agreement was impossible, but for here "agreeing otherwise" as a reflection of the consideration she received for the Cap Cab's reliance on the Agreement

20

As this Court has noted, "Impossibility of performance is recognized in this jurisdiction as excusing a party from performing under an executory contract if the subject matter of the contract is destroyed without fault of the party seeking to be excused from performance. *Sechrest v. Forest Furniture Co.,* 264 N.C. 216, 141 S.E.2d 292 (1965). Since Ms .James was a party to the Agreement, she is in no lawful position to be "excused" from "agreeing otherwise" to solve the venue problem. Also, as a signatory, she has no lawful basis to assert the "impossibility" defense: "If the frustrating event was reasonably foreseeable, the doctrine of frustration is not a defense. In addition, if the parties have contracted in reference to the allocation of the risk involved in the frustrating event, they may not invoke the doctrine of frustration to escape their obligations. See 17A C.J.S. *Contracts* § 463(2) (1963). *See also Perry v. Champlain Oil Co.,* 101 N.H. 97, 134 A.2d 65 (1957); *Blount-Midyette & Co. v. Aeroglide Corp.,* 254 N.C. 484, 119 S.E.2d 225 (1961); Annot., 84 A.L.R.2d 12 (1962).

Simply stated, under North Carolina law, Ms. James has no legitimate basis to use the "venue" problems as a basis to challenge the enforceability of the Arbitration Agreement.

## D. BASED ON THE NATURE OF THE DISTRICT COURT'S ORDER DISCOVERY AND/OR AN EVIDENTIARY HEARING ON ARBITRABILITY WAS NECESSARY

Ms. James argues that the Cap Cab should have "expressly or impliedly" requested relief in the form of an order for further discovery on the arbitrability of Ms. James' claims, or otherwise seek or request an evidentiary hearing on the issue of the arbitrability. As set forth in the Appellant's Brief, such request is not necessary to invoke the need for such relief. Ms. James' efforts to discuss authorities discussing the burdens associated with establishing a right to compel arbitration do not change this discussion.

As Ms. James concedes, "The FAA provides for discovery and a full trial in connection with a motion to compel arbitration only if "'the making of the arbitration agreement ... be in issue."' Ms. James cites *Gordon v. TBC Retail Group, Inc.*, 2016 U.S. Dist. LEXIS 106205, at *11 (D.S.C. 2016) (citing *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999) (quoting 9 U.S.C. § 4)); *Yancey v. Equifax Info. Servs., LLC,* 2019 U.S. Dist. LEXIS 154835, at *3 (E.D. Va. 2019).

All of these authorities involve the same types of disputes as that in the instant action. In *Yancey*, the appellant claimed the signature appearing on the proffered Arbitration Agreement was not hers. Consequently, the court ordered a limited evidentiary hearing on the issue of whether the plaintiff had signed the Arbitration Agreement. Amazingly, Ms. James argues that, "Here, by contrast, discovery and/or

an evidentiary trial will not yield addition information helpful to the court in adjudicating Appellant's Renewed Motion." Contrary to the "laundry list" of issues asserted by Ms. James, the case law clearly supports such a procedural approach.

## CONCLUSION

WHEREFORE, for the Foregoing reasons, RPS Holdings, LLC d/b/a Capital Cabaret, referred to herein as the "Cap Cab" (for obvious reasons) respectfully requests that this Honorable Court REVERSE the District Court's decision to deny the Cap Cab's Arbitration Motion, and REMAND this matter to the District Court for entry of an Order directing the Parties to submit all claims to binding arbitration according to the terms of the Arbitration Agreement. In this Reply, it has been shown that the contractual issues, signature issues, and the exaggerated venue issues are simply not sufficient to disavow the enforceability of the Arbitration Agreement. Cap Cab requests that this Honorable Court REVERSE the district court's decision, or, alternatively, REMAND this matter to the district court for entry of an Order setting discovery and an evidentiary hearing, or "mini-trial" limited to resolve issues of fact material to the threshold issue of arbitrability.

Dated: June 21, 2022                    Respectfully submitted,


                                        /s/ Michael Strickland
                                        Michael Strickland
                                        NC Bar # 17101
                                        MICHAEL W. STRICKLAND & ASSOCIATES
                                        Post Office Box 30787

Raleigh, North Carolina 27622
Telephone No.: (919) 571-3898
Facsimile No.: (919) 571-1038
MStrickland@Stricklandlaw.com

And

/s/ Luke Lirot
Luke Lirot, Esquire
Florida Bar Number 714836
Luke Charles Lirot, P.A.
2240 Belleair Road, Suite 190
Clearwater, Florida 33764
Telephone: (727) 536-2100
Facsimile: (727) 536-2110
Email: luke2@lirotlaw.com
Alternate email addresses:
krista@lirotlaw.com
office@lirotlaw.com
Admitted *pro hac vice*

Counsel for Appellant, RPS Holdings, LLC

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation provided in Fed. R. App. P. 32(a)(7)(B). The foregoing brief contains 6,016 words of Times New Roman (14 point) proportional type. The word processing software used to prepare brief was Word for Windows 10.

/s/ Michael Strickland
Michael Strickland
NC Bar # 17101

## CERTIFICATE OF SERVICE

I hereby certify that the forgoing brief of the Appellant was filed today, June 21, 2022, I electronically filed the foregoing true and accurate copy of **APPELLANT'S REPLY BRIEF** with the Court using the CM/ECF system, and I hereby certify that I have thereby electronically served the document on the following:

Gilda A. Hernandez, Esq.
Charlotte C. Smith, Esq.
1020 Southhill Drive, Suite 130
Cary, NC 27513
ghernandez@gildahernandezlaw.com
csmith@gildahernandezlaw.com

s/ Michael Strickland
Michael Strickland
NC Bar # 17101