**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-1027

SIOBHAN JAMES, on behalf of herself and all others similarly situated,

        Plaintiff - Appellee,

  v.

RPS HOLDINGS, LLC, d/b/a Capital Cabaret,

        Defendant - Appellant.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. L. Patrick Auld, Magistrate Judge. (1:20−cv−00134−LPA)

Argued: September 19, 2023
                                                    Decided: January 19, 2024

Before HARRIS and QUATTLEBAUM, Circuit Judges, and KEENAN, Senior Circuit Judge.

Vacated and remanded with instructions by unpublished per curiam opinion.

**ARGUED:** Luke Charles Lirot, LUKE LIROT, P.A., Clearwater, Florida, for Appellant. Gilda Adriana Hernandez, LAW OFFICES OF GILDA A. HERNANDEZ, PLLC, Cary, North Carolina, for Appellee. **ON BRIEF:** Michael Strickland, MICHAEL W. STRICKLAND AND ASSOC., Raleigh, North Carolina, for Appellant. Charlotte C. Smith, LAW OFFICES OF GILDA A. HERNANDEZ, PLLC, Cary, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

The issue in this case arises from a motion to compel arbitration in a putative class action. We consider whether there was a genuine issue of material fact regarding whether an entity established that it was the corporate employer who had entered into an arbitration agreement with its employee. The alleged agreement required, among other things, that the employee submit to arbitration any wage-related claims against the employer. The district court held that the entity failed to carry its evidentiary burden to establish an enforceable agreement compelling arbitration of such claims. After review of the record, we vacate the district court's order and conclude that under Section 4 of the Federal Arbitration Act, the court should have conducted a trial to resolve the issue whether the parties entered into an enforceable arbitration agreement. 9 U.S.C. § 4.

I.

Siobhan James filed a complaint asserting a putative class action against her "employer," "PRS Partners, LLC, d/b/a Capital Cabaret" (PRS). James alleged that she worked as an "exotic dancer" at PRS's "Capital Cabaret Gentlemen's Club in Morrisville, North Carolina," and that PRS violated the Fair Labor Standards Act (the FLSA) and the North Carolina Wage and Hour Act by failing to pay its dancers wages required by these

laws.[1] James filed a motion for conditional certification of a proposed class,[2] namely, of all exotic dancers who worked at "Defendant's Capital Cabaret" gentlemen's club for the last several years prior to the filing of the lawsuit.

In response, PRS filed a motion to compel arbitration, arguing that James's claims were subject to arbitration pursuant to an agreement between the parties. PRS submitted in support of its motion three exhibits: (1) a copy of James's United States passport; (2) a three-page, signed arbitration agreement (the alleged agreement); and (3) a second set of "signatures" on a separate page that referred to an "Entertainer Orientation Packet."

The alleged agreement states that it was made "by and between" the "Company" and the "Entertainer," which are identified in the agreement in handwriting as "Cap Cab" and "S. James." The document further states that "covered claims," including claims "alleging [that James] is an employee of [Cap Cab] and/or was improperly or insufficiently paid wages" under the FLSA or state wage laws, "shall be submitted" to arbitration.

At the bottom of the alleged agreement, above the signature line designated for "Entertainer," appears the hand-printed name "S. James." Above the signature line for the "Company," there are indecipherable handwritten initials of an unidentified signatory. Next to each "signature" is the date August 4, 2015. An additional page bearing the same

---

[1] James also asserted numerous state law claims in her individual capacity.

[2] Although James alleged in her complaint a collective action under 29 U.S.C. § 216(b) for two counts under the FLSA and a class action under Federal Rule of Civil Procedure 23 for her state wage claim, she sought conditional certification only under § 216(b).

3

date states that James has read the "Entertainer Orientation Packet" and will comply with its "rules." On the "Entertainer Signature" line of that additional page is the cursive signature "S. James," and on the "House Signature" line is an unidentifiable handwritten set of initials.

The district court[3] denied without prejudice PRS's motion to compel arbitration, concluding that PRS failed to show the existence of an agreement between James and PRS. The court held that the alleged agreement "[o]n its face" exists between James and "Cap Cab." And, although PRS had argued that (1) it "does business as Capital Cabaret," and that (2) "Cap Cab" is an abbreviation for "Capital Cabaret," the court observed that PRS had not submitted any evidence to support these arguments.

The court further observed that under North Carolina law, to enforce a contractual obligation made under an assumed name, a business entity conducting business in that manner must identify the assumed name on a certificate filed in the "register of deeds" in the entity's county of operation. *See* N.C. Gen. Stat. §§ 66-71.4(a), 66-71.5(a). The court's review of relevant public records did not show that PRS operated under any assumed names. The court observed that, instead, a different corporate entity, "RPS Holdings, LLC" (RPS), had filed a "Certificate of Assumed Name for a Limited Liability Company" indicating that RPS "does business under the assumed name Capital Cabaret." Thus, the district court concluded that PRS failed to show that an agreement existed between James and PRS, because the record did not demonstrate "a link between PRS and [RPS] or

---

[3] The parties agreed to proceed before a magistrate judge in the district court.

4

between PRS and the assumed name Capital Cabaret (or 'Cap Cab')." After this ruling, PRS filed a declaration by Phong Nguyen, a principal in both PRS and RPS, in which he stated that (1) PRS serves as a landlord and owns the building where Capital Cabaret is located; (2) RPS owns and operates the Capital Cabaret gentlemen's club, and (3) RPS "entered into an Arbitration Agreement" with James (the first Nguyen declaration).

James filed an amended complaint, changing the defendant's name to RPS "d/b/a [doing business as] Capital Cabaret," as well as an amended motion requesting the court to conditionally certify the putative class. RPS filed an opposition to the motion to certify, and a renewed motion to compel arbitration, attaching the same three exhibits described above, namely, a copy of James's passport, the alleged agreement, and the additional "Entertainer Orientation Packet" signature page. James opposed the renewed motion to compel, arguing in relevant part that RPS was not a party to the alleged agreement and had not shown a relationship among "Cap Cab," RPS, and RPS's assumed name of "Capital Cabaret."

The district court denied RPS's renewed motion to compel arbitration. The court observed that the alleged agreement does not "mention[]" Capital Cabaret or RPS, and that the court "expect[ed] more clarity regarding the identity of the contracting parties." Similar to the court's initial ruling, the court explained that RPS "failed to point to anything in the record establishing a connection between 'Cap Cab' and RPS." To the extent that RPS argued that "Cap Cab" was an abbreviation for "Capital Cabaret," the court held that RPS had not supported that argument with evidence or explained how RPS's identity reasonably can be ascertained from the alleged agreement. Finally, the court held that even assuming

5

that "Cap Cab" was a separate legal entity, RPS failed to show that the unidentified person signing the alleged agreement on behalf of "Cap Cab" acted as an agent for RPS.[4]

RPS filed a notice of appeal in this Court, divesting the district court of jurisdiction over the underlying claims.[5] *See Levin v. Alms & Assocs., Inc.*, 634 F.3d 260, 266 (4th Cir. 2011). We have jurisdiction under § 16 of the Federal Arbitration Act (the FAA) to review on an interlocutory basis the district court's denial of RPS's motion to compel arbitration. 9 U.S.C. § 16(a)(1)(b).

II.

RPS argues that the district court erred in denying its renewed motion to compel arbitration. RPS contends that the alleged agreement demonstrates that RPS formed a contract with James, because "Cap Cab" was a "common sense" abbreviation of Capital Cabaret, the assumed name of RPS, which is James's employer.[6] RPS further contends

---

[4] The district court also granted in part James's motion to conditionally certify a class under § 216. That ruling is not before us in the current appeal.

[5] The district court granted RPS's motion for stay pending appeal, and did not consider RPS's new argument that the parties entered into an "implied-in-fact" arbitration agreement or RPS's newly submitted exhibits including a "better," additional arbitration agreement signed by James with "Capital Cabaret," arbitration agreements signed by other dancers, and a second, separate declaration by Nguyen. RPS does not rely on these exhibits in this appeal.

[6] We disagree with RPS's additional argument that the district court failed to acknowledge that federal public policy favors the arbitration of claims. The FAA policy generally favoring arbitration applies "only when . . . [an] 'agreement is ambiguous about whether it covers the dispute at hand.'" *Raymond James Fin. Servs., Inc. v. Cary*, 709 F.3d 382, 386 (4th Cir. 2013). The policy does not apply when, as here, it is uncertain "whether (Continued)

6

that the district court was required under 9 U.S.C. § 4 to hold a trial before denying the renewed motion to compel arbitration, because there were genuine issues of material fact regarding the making of the alleged agreement.

James argues in response that RPS was required, but failed, to submit sufficient evidence to show that she had entered into the alleged agreement with RPS and that the parties had mutually agreed to its terms. Based on this asserted failure to make an initial showing that the parties agreed to arbitrate certain types of disputes, James contends that RPS should not be granted an additional opportunity to present evidence regarding whether "Cap Cab" was understood by the parties as an abbreviation for "Capital Cabaret." We disagree with James's arguments.

We review de novo the district court's denial of a motion to compel arbitration. *Rowland v. Sandy Morris Fin. & Estate Planning Servs., LLC*, 993 F.3d 253, 257 (4th Cir. 2021). "[W]e accept as true the allegations of the [amended complaint] that relate to the 'underlying dispute between the parties.'" *Id.* (citation omitted).

Under § 4 of the FAA, a party seeking to enforce an arbitration agreement may ask a district court to compel arbitration under the terms of the parties' agreement. 9 U.S.C. § 4. The FAA permits a party to obtain a court order compelling arbitration by showing: "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the

---

an agreement even exists between the parties in the first place." *Id.*; *see also Rowland*, 993 F.3d at 258 (explaining that arbitration "is permitted only when the parties agree to it").

7

transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005) (citation omitted). At issue here is a portion of the second listed element, whether there was a written agreement between the parties to arbitrate the subject matter of the dispute.

Under the FAA, when the "making of the arbitration agreement . . . be in issue," the court "shall proceed summarily to the trial thereof." 9 U.S.C. § 4. Under this provision, courts employ the summary judgment standard and conduct a trial only when "there are 'genuine issues of material fact.'" *Rowland*, 993 F.3d at 258 (quoting *Chorley Enters, Inc.. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 564 (4th Cir. 2015)). "[T]he burden is on the defendant to 'establish[] the existence of a binding contract to arbitrate the dispute.'" *Id.* (quoting *Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 867 F.3d 449, 456 (4th Cir. 2017)).

The issue whether the parties entered into an enforceable agreement to arbitrate presents a question of state law. *Id.* at 258. Here, the parties contend, and we agree, that North Carolina law is controlling because that state is the purported place of contract formation. *Fortune Ins. Co. v. Owens*, 526 S.E.2d 463, 466 (N.C. 2000) (lex loci contractus doctrine). Under North Carolina law, "[t]he well-settled elements of a valid contract are offer, acceptance, consideration, and mutuality of assent to the contract's essential terms." *Se. Caissons, LLC v. Choate Constr. Co.*, 784 S.E.2d 650, 654 (N.C. Ct. App. 2016). "Mutual assent is normally established by an offer by one party and an acceptance by the

8

other" that establishes a "meeting of the minds." *Creech v. Melnik*, 495 S.E.2d 907, 912 (N.C. 1998).

Under North Carolina law, the "mistaken use of [a corporate] name is ordinarily not material if the parties really intended [to reference] the corporation by its proper name." *See Tomika Invs., Inc. v. Macedonia True Vine Pentecostal Holiness Church of God, Inc.*, 524 S.E.2d 591, 594 (N.C. Ct. App. 2000). "If the [corporate] name is expressed in the written instrument, so that the real name can be ascertained from it, this is sufficient; but if necessary, other evidence may be produced to establish what corporation was intended." *Id.* (explaining that the record showed that the defendant understood that it was "dealing with" a corporation named "Tomika Investment" even though the corporation was incorrectly labeled as "Tomika Investments, Inc." instead of "Tomika Investment Company").

In the present case, the district court correctly observed that RPS failed to submit evidence that affirmatively established that "Cap Cab" was an abbreviation for RPS's assumed name, "Capital Cabaret." Nonetheless, we conclude that a fact finder faced with the present record could have reached the conclusion that "Cap Cab" was "Capital Cabaret" and that, therefore, the court was compelled to conduct a trial under § 4 of the FAA. *See Rowland*, 993 F.3d at 258.

James alleged in her amended complaint that she was employed by RPS, and that RPS operates under the assumed name of "Capital Cabaret." As evidenced by the first Nguyen declaration, RPS understood that it had entered into an agreement, which bore

9

James' signature, for the parties to submit to arbitration any covered claim.[7] And James identified her employer in her amended complaint as RPS, operating under the assumed name of "Capital Cabaret." Although the agreement recites that it is entered into between James and "Cap Cab," the document also makes clear that James was "providing services" to "Cap Cab" in an employment context. The alleged agreement further states that it covers certain categories of claims, including the types of claims in which James presently alleges that she is the "employee" of "Capital Cabaret." Upon reviewing the language of the alleged agreement, along with James's allegations that her employer was RPS, which operated a club under its assumed name "Capital Cabaret," and RPS's submission in the first Nguyen declaration that it entered into an arbitration agreement with James, we conclude that this record was sufficient to create a genuine issue of material fact whether "Cap Cab" was an abbreviation for "Capital Cabaret."

Our conclusion is not affected by the district court's additional finding that RPS failed to show that the unidentified person who signed the agreement for "Cap Cab" acted as an agent for RPS. A factfinder drawing from the present record could conclude that RPS proffered the agreement to James, that James signed the agreement, and that RPS "implicitly agreed to be mutually bound" by the agreement. *See Howard v. Oakwood*

---

[7] We observe that the alleged agreement was signed in August 2015, but that James alleged that she worked for RPS from July 2016 through January 2018. This factual discrepancy can be addressed upon remand but does not change our conclusion that a trial was necessary.

10

*Homes Corp.*, 516 S.E.2d 879, 882 (N.C. Ct. App. 1999) ("The FAA requires that agreements to arbitrate be in writing," but the agreements "need not be signed."); *see also O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 274-75 (4th Cir. 1997) (rejecting employee's argument that employer did not agree to be bound by arbitration agreement when the employer asked the employee to submit to binding arbitration). Thus, on this record, we conclude that there exists "a genuine dispute of material fact regarding the existence of an agreement to arbitrate." *See Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019) (citation and quotation marks omitted); *see Rowland*, 993 F.3d at 257. Accordingly, we hold that the district court erred in denying RPS's motion to compel arbitration at this stage in the proceedings and should have proceeded to trial on the issue whether the parties agreed to arbitrate the subject matter of James's amended complaint. 9 U.S.C. § 4; *see Rowland*, 993 F.3d at 258.

III.

For these reasons, we vacate the district court's order denying RPS's motion to compel arbitration and remand the case to the district court for further proceedings.[8]

*VACATED AND REMANDED*<br>*WITH INSTRUCTIONS*

---

[8] We do not reach James's arguments asserting alternative bases for affirmance. The district court did not address these arguments in denying RPS's motion to compel arbitration and should be given the opportunity to do so in the first instance.